No. 36,838

HAROLD JOHN LAMBERSON, *Plaintiff,* MRS. OTTO LAMBERSON, *Appellant,* v. LORRAINE LAMBERSON, *Defendant,* FRED KREUTZER and MADALINE KREUTZER, *Appellees.*

(187 P. 2d 366)

No. 37,086

HAROLD JOHN LAMBERSON, *Appellant,* v. LORRAINE LAMBERSON, *Appellee,* FRED KREUTZER and MADALINE KREUTZER, *Appellees.*

Opinion filed December 6, 1947.

*Jacob A. Dickinson,* of Topeka, argued the cause, and *Edward Rooney* and *David Prager,* both of Topeka, were with him on the briefs for the appellant.

*Warden L. Noe,* of Holton, and *Hal C. Davis,* of Topeka, argued the cause for the appellees.

The opinion of the court was delivered by

SMITH, J.: These appeals both involve post-judgment proceedings having to do with child custody in a divorce action. The mother of the plaintiff was found guilty of contempt and sentenced to jail. She appeals. The motion of the plaintiff to quash service of notice of a motion of defendant's parents to change the custody of the child was overruled. He appeals.

About many of the facts there is no dispute. The divorce action was heard while plaintiff, the husband, was home on furlough from the army during the war. Defendant, the wife, was represented in court by counsel but was not personally present in the courtroom. On October 8, 1945, judgment for divorce in favor of the plaintiff was entered and custody of a child aged nineteen months at the time was given plaintiff, "said child to be left in the care and custody of Mrs. Otto Lamberson, mother of said plaintiff, until such time as plaintiff is discharged from military service." It may be stated here parenthetically that the child was never delivered to Mrs. Lamberson in compliance with that order. At the time the judgment was entered the parents of the defendant had possession of him and did not deliver him to Mrs. Lamberson until a later order was made by the trial court. On November 4, 1945, Fred Kreutzer and Madaline Kreutzer, the defendant's stepfather and mother, filed a motion in the divorce action stating their relationship and that the child had never had any other home than theirs and asking that the judgment be modified giving them his custody. These two persons were not parties to the action at the outset and they never were made parties to it. Notice was given neither plaintiff nor defendant of the filing or hearing of this motion. On December 11, 1945, Mrs. Lamberson filed a motion in which she set out the original judgment for custody and stated that the Kreutzers still retained custody of the child and asked for an order directing them to deliver him to the court in conformance with the judgment and that she might have his custody. On December 21, 1945, the trial court heard both these motions and modified the original order by letting the custody remain in plaintiff but subject to the conditions that while the plaintiff was in military service and until such time after his discharge as was necessary for him to provide a home for the child, the custody was awarded to the Kreutzers for three weeks, and to the Lambersons for one week of each month, the exchange to take place in

the office of the clerk of the court on an appointed day. It was further ordered that Mrs. Lamberson should pay to Mr. and Mrs. Kreutzer monthly three-fourths of any money she should receive from the father for the support of the child. Matters went along until September 20, 1946. Meanwhile hostilities ended in Europe and the plaintiff was discharged from the army and came home. On September 20, 1946, an accusation in contempt was filed against Mrs. Lamberson by the Kreutzers. This accusation stated that the Kreutzers had delivered the child to the clerk of the court on October 7, 1947. The Kreutzers testified that they turned the child over to the clerk and that they saw that official deliver him to his father. Mr. Kreutzer testified that plaintiff had told him he was living in a home and that he would let him know how the child was getting along. The clerk of the court testified about receiving the child from his grandmother and turning him over to his father and that the father had told her he was there with his present wife to receive the child; that he did not tell her his plans. At the close of the evidence offered by the Kreutzers Mrs. Lamberson demurred to it and asked to be discharged on the ground that it did not show her to be guilty of contempt. The motion and demurrer were overruled. Mrs. Lamberson, against whom the accusation had been filed, testified in her own behalf that the child had not been delivered to her by the clerk; her son, the plaintiff, had been discharged from the army at that time, was remarried, had a home in California and intended to take the child there and that as far as she knew her son left Holton with the child and his wife and intended to take him back with him to California; that she had never, since August 21, 1946, had the child and if she had him she would be willing to produce him.

On cross-examination she testified that she drove away from the courthouse with her son and the child and she did not touch the child except to love him and tell him goodbye. She further testified, as follows:

"Q. Do you know where the child is now? A. With his father in Watsonville, California.

"Q. What is the street number? A. I do not have it, it is at home."

She further testified that she had heard from her son and that he was in California, and that he arrived in California the Sunday or Monday following August 21, 1946.

"The Court:

"Q. The time you came here August 21st, you knew at that time your son was planning on leaving with the child? A. He had no plans until after they turned the child over to him and he said we will leave now."

She further testified that it was her intention to call for the child at the clerk's office on August 21 and that she thought it was all right if her son, the plaintiff, would get the child.

At the close of this trial the court found Mrs. Lamberson guilty of contempt. The court in its judgment gave her fifteen days within which to purge herself of contempt by delivering the child to the clerk of the court and provided further that if she failed to do so that she be committed to the jail upon the praecipe of either Mr. or Mrs. Kreutzer and held until the further order of the court. Jurisdiction was reserved to make further order concerning the child. In due time Mrs. Lamberson appealed from that order. That is appeal number 36,838.

Mrs. Lamberson assigns two specifications of error in that appeal: That the trial court erred first in overruling her demurrer to the evidence and motion to discharge and second in finding her guilty of contempt and ordering her confined in jail under the terms set out above.

Before we discuss the legal questions involved in the foregoing we shall set down the additional facts that have to do with the second appeal.

It will be remembered that on the same date when the Kreutzers filed the accusation in contempt they also filed a motion asking the trial court to change its order as to the custody of the child by awarding it to them without permitting the Lambersons to have him one week each month. They caused a notice to issue to Mrs. Lamberson and Harold John Lamberson, the father of the child, notifying them of when this motion would be heard. This motion was handed to the sheriff. The return of that official on this notice is as follows.

"On the 20th day of September, 1946, I received this writ and notice of hearing and thereafter and on the 20th day of September, 1946, I executed the same by serving a true copy of the same upon Mrs. Otto Lamberson, personally, in Jackson County, Kansas; and on the 20th day of September, 1946, I executed the same by leaving a true copy of the same at the last known residence of the plaintiff, Harold John Lamberson, in Jackson County, Kansas."

This motion was not heard October 7, 1946, when the accusation was heard. On February 15, 1947, Harold John Lamberson en-

tered a special appearance and filed a motion to quash the service of this notice on the ground that he was not a resident of Jackson county, Kansas, and because the return of the sheriff on the notice showed on its face that no valid service was had at the usual place of residence of plaintiff and for the further reason that the court was without jurisdiction over the plaintiff or Charles Harold Lamberson, the minor child, because neither one was a resident of Kansas. This motion was denied. The plaintiff has appealed from that order. That appeal is case number 37,086. The specification of error is that the court erred in overruling that motion.

We shall consider first the appeal of Mrs. Lamberson from the order committing her to jail. That is case number 36,838. There are a number of reasons why that order must be reversed. In the first place, the order, with a violation of which Mrs. Lamberson was charged, was made without notice to any of the parties. Custody of the child had been given to the plaintiff in the final judgment. There is no doubt but that the trial court had authority to make such orders respecting the future custody of the child as it deemed best for the welfare of the child. In such cases the child's welfare is the sole criterion. We have held that in such a case a party having an interest in custody of the child may appear and present evidence and may appeal even though they are not parties to the action. (See *Purdy v. Ernest*, 93 Kan. 157, 143 Pac. 429.) In the opinion in that case, however, we stated that persons claiming an interest in the custody should be notified. Neither the plaintiff himself, to whom the final custody had been given, nor his parents, to whom temporary custody had been given, were given any notice of this order. Without such notice the order was void.

Another fatal defect in the contempt proceedings is that the order with a violation of which Mrs. Lamberson was charged was ambiguous. It provided that the Kreutzers should have custody of the child for a portion of the time each month until such time as the plaintiff should be discharged from the service and furnish a home for the child. There can be no doubt under the evidence at the hearing of the accused but that the plaintiff had been discharged from the service and that he did have a home ready for the child. Perhaps a proper construction of this order would be that the court should have been advised of this situation and asked to modify the order. However, it was open to the interpretation that it would

be self executing. It was not contempt on the part of Mrs. Lamberson for her son to give the order such an interpretation.

Another fatal defect is that the evidence taken before the court on the hearing of the accusation in contempt shows conclusively that Mrs. Lamberson did not have power to comply with the order of the court as to the delivery of the child to the Kreutzers. The evidence is that the child's father acting on his own initiative took it to California where it was at the time the Kreutzers claimed it should have been delivered to them. Under such circumstances it was error for the court to commit Mrs. Lamberson to jail until she complied with the order with which she was powerless to comply. (See *Wohlfort v. Wohlfort,* 116 Kan. 154, 163, 225 Pac. 746; also *Davison v. Davison,* 125 Kan. 807, 266 Pac. 650.)

The order of the court of November 7, 1946, finding Mrs. Otto Lamberson guilty of contempt of court and committing her to jail is reversed with directions to set the order aside and discharge Mrs. Lamberson.

In Case No. 37,086, the record discloses that the plaintiff appeared specially and asked to have the service with notice upon him quashed. This was the notice of the hearing of the motion of the Kreutzers to change final judgment as to the custody of the child by giving them entire custody of him. A notice was handed to the sheriff to be served upon the plaintiff. The sheriff's return showed he served it by leaving a true copy at the "last known residence of plaintiff, Harold John Lamberson" in Jackson County, Kansas. The plaintiff argued at the hearing of this motion that this was not sufficient service. The service of notice is provided for by G. S. 1935, 60-724. That section reads as follows:

"The service of a notice shall be by copy served in any manner in which a summons may be served, and may be served without the state; and when served by an officer, he shall be entitled to like fees."

The service of summons was covered by G. S. 1935, 60-2507. That section reads as follows:

"The service shall be by delivering a copy of the summons to the defendant personally, or by leaving one at his usual place of residence, at any time before the return day."

The sheriff attempted to obtain service of this notice by complying with the second provision of the above paragraph, that is, he was not able to find the plaintiff but he attempted to comply with the second provision by leaving a copy. The statute is clear,

however, that this copy must be left at the usual place of residence of the person to whom the notice is being given. From the language. on the return it is perfectly clear that the sheriff did not have any idea that this was the usual place of residence of the plaintiff. If he had said the usual place of residence he would have had a return and service which on its face would have been good. However, he said "last known residence," which was a clear indication that he did not have any idea that the place where he was leaving the summons was the usual place of residence of the plaintiff. The idea of residence service is that one may not be able to avoid the sheriff and thereby escape receiving notice and at the same time as much care as possible must be taken that litigants will have actual notice of pending matters. The legislature has provided a definition for the term "residence" and the term "usual place of residence." G. S. 1935, 77-201, paragraphs 23 and 24, read as follows:

"The term 'residence' shall be construed to mean the place adopted by a person as his place of habitation, and to which, whenever he is absent, he has the intention of returning. When a person eats at one place and sleeps at another, the place where such person sleeps shall be deemed his residence.

"The terms 'usual place of residence' and 'usual place of abode,' when applied to the service of any process or notice, shall be construed to mean the place usually occupied by a person. If such person have no family, or do not have his family with him, his office or place of business, or if he have no place of business, the room or place where he usually sleeps shall be construed to be such place of residence or abode."

In *Amsbaugh v. Exchange Bank*, 33 Kan. 100, 5 Pac. 384, we held:

"A resident of a state left the same, intending never to return, and afterwards an action was commenced against him in such state, and the original process therein was served by delivering a copy thereof to his wife at the place where he and she had resided up to the time of his departure, and where she in fact was still living, and a personal judgment was rendered against him upon this service, and upon this service only. Held, that such judgment was rendered without jurisdiction of the person of the defendant, and cannot be enforced by action or otherwise in another state." (Syl.)

In *Miles v. Miles*, 65 Kan. 676, 70 Pac. 631, we held:

"By section 645 of the code (Gen. Stat. 1901, § 5138) it is expressly provided:

" 'When a divorce is granted the court shall make provision for guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect whenever circumstances render such change proper.'

"This section leaves the matter entirely in the hands of the court. It may at any time upon proper notice, change any former order made with reference to these matters by adding to, or taking from, the burdens of either party relative to the same; . . ." (p. 678.)

See, also, *In re Culp*, 2 Cal. App. 70, 83 Pac. 89.

The judgment of the trial court overruling the motion of plaintiff to quash the notice upon him is reversed.