No. 62,158

In The Matter of the Marriage of HAROLD J. KIISTER, *Appellee,* and RENATE G. KIISTER, *Appellant.*

(777 P.2d 272)

Opinion filed July 14, 1989.

*Timothy J. Grillot,* of Tucker & Grillot, of Parsons, argued the cause and was on the briefs for appellant.

*Barry K. Disney,* of Fielder & Disney, of Girard, argued the cause and was on the briefs for appellee.

The opinion of the court was delivered by

HERD, J.: This is a domestic relations action pertaining to parental visitation rights. We granted review of the trial court's post-divorce order granting Harold Kiister specific overnight visitation every other weekend with his two adopted daughters. Appellant Renate Kiister argues the trial court erred in holding evidence of events occurring before the Kiisters' divorce was granted was inadmissible. The Court of Appeals held the trial court's error on this issue was not reversible and affirmed.

In the divorce granted December 11, 1986, Harold and Renate were awarded joint custody of their adopted daughters, with residence awarded to Renate. Harold was awarded "reasonable visitation" rights. Harold lived apart from Renate for almost three years before the divorce, during which time he rarely visited his daughters and never took them overnight. After the divorce, Harold visited the girls only four times, for a few minutes each time.

After putting his property in his second wife's name, Harold filed a pro se letter with the district court on May 6, 1987, stating he was unable to pay maintenance of $100 a month to Renate. On August 28, 1987, Renate obtained an execution order on the property. On September 2, 1987, Harold filed an affidavit in contempt against Renate for not allowing him overnight visitation with his daughters. This was the first complaint, formal or informal, he had ever made about visitation. The motion was later changed to one to compel specific visitation, including overnight visitation.

On September 3, 1987, Renate moved the court to release the writ of special execution, stating Harold had paid the maintenance owed her. At the hearing on visitation rights held January 19, 1988, the evidence showed Harold was four months overdue on maintenance. It is thus evident Harold immediately stopped paying maintenance again once Renate released the writ.

On October 27, 1987, Renate filed a motion to compel discovery of Harold's medical and psychological counseling records. The court denied the motion and ordered discovery limited to events occurring after December 11, 1986, when the divorce was granted. Renate wished to introduce evidence of Harold's alcohol abuse, violent temper, and sexual abuse of an older adopted daughter, now an adult. Harold had told his doctor and his psychologist about his older daughter's allegations of sexual abuse. The SRS had found the older daughter in need of care and placed her in foster care. Harold had stipulated in the SRS report that his daughter was in need of care.

In his deposition taken before the visitation hearing, however, Harold denied sexually abusing his daughter. He also denied allegations that he had beaten an adopted son earlier in the marriage. Renate testified that Harold had refused to accept the girls' Christmas presents to him, telling them he did not "want the damn presents." His behavior on that date had been witnessed by several people. Harold testified he had not taken a drink for twelve years, but one of the witnesses to this event, a family friend, testified Harold "reeked of alcohol." Harold argued the event happened before the divorce and was thus, like the sexual and physical abuse, inadmissible.

Renate testified she had never denied Harold visitation, although he would show up unannounced, usually when the girls

were getting ready for school. She said she did ask him where he planned to take the girls the one time he wanted them to leave the house with him. He told her "it was none of [her] damn business" and "stomped out." She testified Harold had never asked to take the girls overnight before the divorce, and she would not have allowed it had he asked.

It is unclear whether the custody and visitation determinations entered at the time of divorce were by stipulation or whether they were ordered by the trial court following a trial on the merits. According to Renate, custody was initially contested. Her answer to Harold's divorce petition, filed June 18, 1986, denied his allegation that he was a fit and proper person to have the care, custody, and control of the girls. Renate's attorney argued at the visitation hearing that Renate had finally agreed to joint custody and "reasonable visitation" because she did not believe Harold would claim overnight visitation, as he had never done so before. He stated that the court at the divorce hearing had been advised a settlement had been reached, and the trial then proceeded as an uncontested matter. This contention is supported by the domestic relations termination information, which shows the divorce action was initially contested but was settled before trial.

The trial court proceeded on the assumption that, even if the parties had stipulated as to visitation at the time of divorce, it still could not look at evidence prior to that date because Renate had not objected to "reasonable visitation" for Harold. The trial court equated "reasonable visitation" with overnight visitation.

The Court of Appeals found the trial court erred in finding it could not receive evidence of events occurring before the divorce. It found the trial court was not bound by any stipulation of the parties at the time the divorce was granted and could have considered evidence of events occurring before the divorce was granted.

K.S.A. 1988 Supp. 60-1616(a) creates a statutory presumption that the parent who is not granted custody or residence will receive reasonable visitation. However, that presumption may be overcome if, after a hearing, the trial judge finds "that visitation would endanger seriously the child's physical, mental, moral or emotional health." Section (c) provides: "The court may modify an order granting or denying visitation rights whenever modification would serve the best interests of the child."

In *Hill v. Hill,* 228 Kan. 680, 685, 620 P.2d 1114 (1980), we held where, because of entry of default judgment, facts are not substantially developed and presented to the court granting custody, the court retains the discretion to later consider evidence of facts existing at the time of the decree. We cited K.S.A. 1979 Supp. 60-1610(b), which provided that: "In all cases involving the custody of any minor children, the court shall consider the best interests of such children to be paramount." See K.S.A. 1988 Supp. 60-1610(a)(3): "The court shall determine custody or residency of a child in accordance with the best interests of the child."

In *Anhalt v. Fesler,* 6 Kan. App. 2d 921, 924, 636 P.2d 224 (1981), the Court of Appeals extended the *Hill* doctrine to custody decrees entered upon written stipulation of the parties. It later extended the doctrine to child support in *Stovall v. Stovall,* 10 Kan. App. 2d 521, 522, 707 P.2d 1082 (1985). The court found a change in circumstances is no longer necessary, under *Hill,* when the issue has not previously been litigated.

In the instant case, the Court of Appeals again extended *Hill* to all those situations where the facts concerning visitation were not substantially developed and presented to the court. The overriding policy in Kansas is that matters concerning custody of children are to be determined by their best interests. See *Lamberson v. Lamberson,* 164 Kan. 38, 42, 187 P.2d 366 (1947). The Court of Appeals affirmed, however, on the theory it was within the trial court's discretion whether to consider evidence of facts in existence at the time of the divorce decree. See *Hill,* 228 Kan. 680, Syl. ¶ 2.

The Court of Appeals found the trial court's error did not prejudice the substantial rights of Renate or the children because, although it did not allow evidence of abusive behavior before the divorce, it did consider evidence of such behavior after the divorce. The Court of Appeals was referring to controverted evidence showing Harold had broken his second wife's arm and had blackened her eye, and Harold's testimony that he loses his temper at times, but does not consider it a problem. The Court of Appeals also noted the trial court took judicial notice of Harold's stipulation that his older daughter was a child in need of care. The Court of Appeals therefore concluded that, if evidence of physical and sexual abuse would have swayed the

court, this evidence would have done it. Since it did not, additional evidence would have been fruitless.

We disagree. We adopt the Court of Appeals' extension of *Hill*, but differ in that we find Renate and the children were prejudiced by the district court's refusal to hear evidence of conduct occurring before the divorce pertaining to Harold's fitness to exercise overnight visitation.

Let us therefore consider the issue of whether the trial court also erred in denying Renate's motion to compel discovery of Harold's medical and psychological counseling records. Under K.S.A. 1988 Supp. 60-427 and K.S.A. 1988 Supp. 74-5323, a patient may refuse to disclose confidential communications between himself and a doctor or psychologist, subject to exceptions not immediately relevant.

The Court of Appeals found that, when Harold's right of confidentiality is weighed against the best interests of the children, the right of confidentiality must give way, pursuant to *Werner v. Kliewer*, 238 Kan. 289, 293, 710 P.2d 1250 (1985). We agree. *Werner* was an invasion of privacy case in which we held a mother's medical privilege under K.S.A. 60-427 was waived and overridden by K.S.A. 60-1610(a)(3) when the court was required to determine her fitness to have custody of the children in a divorce proceeding.

The Court of Appeals further held in the instant case, however, that the trial court's decision to limit the visitation hearing to those events occurring after the divorce rendered the confidential evidence irrelevant. With this we disagree. In child custody matters and visitation rights, the court's paramount concern is the welfare of the child. *State ex rel. Wingard v. Sill*, 223 Kan. 661, 666, 576 P.2d 620 (1978). Thus, it was error to have failed to grant the discovery order. In-camera inspection is available to prevent disclosure of irrelevant evidence at trial. See *Werner*, 238 Kan. at 298.

The judgment of the district court is reversed and remanded for further proceedings consistent with this decision.