(962 P.2d 1140)
No. 80,197

In the Matter of the Marriage of JOSEPH M. PERRY, *Appellee*, and LYNETTE M. BURDEN, formerly LYNETTE M. PERRY, *Appellant*.

Opinion filed August 28, 1998.

*Rene M. Netherton*, of Topeka, for appellant.

*Charles A. Briscoe*, of Lawrence, for appellee.

Before MARQUARDT, P.J., GERNON and KNUDSON, JJ.

KNUDSON, J.: Lynette M. Burden, B.P.'s mother, appeals from the district court's modification decree entered under the Uniform Child Custody Jurisdiction Act (K.S.A. 38-1301 *et seq.*), designating B.P.'s primary residence to be with her father, Joseph M. Perry, in Kansas. On appeal, Lynette contends that the Kansas court improvidently entered a temporary custody order inconsistent with the previous custody order entered in California and that the district court's final order was erroneous as the evidence did not demonstrate a material change of circumstances that would warrant transferring B.P.'s primary residence from her mother to her father.

We affirm because the district court properly asserted jurisdiction, Lynette's notice of appeal did not designate the district court's temporary custody order, and under *Hill v. Hill*, 228 Kan. 680, 685, 620 P.2d 1114 (1980), the district court's final order properly considered and decided the question of whether B.P.'s best interests

would be served by living primarily with her mother or with her father.

The underlying facts are not in material dispute. Lynette and Joseph have one child, B.P., born on January 26, 1991. The parties were divorced after a 7-year marriage in 1993. As divorces go, this one was amicable, with the parties entering into a written stipulation that was approved by the California divorce court as to B.P.'s custody and the visitation rights of the parties. The parties agreed to joint legal and physical custody, alternating residential custody every 6 months; when B.P. was old enough to begin school, she would live with Joseph during the school year and with Lynette during the summer months.

In 1995, Joseph believed he would enter the United States Marine Corps. He and Lynette executed a custody agreement that left undisturbed joint legal and physical custody but provided that Lynette would have primary residential custody. However, the agreement also provided that "[i]f [Joseph] fails to transfer to the United States Marine Corps, visitation shall remain as set forth in the Judgment entered herein [in 1993]." This agreement was approved by the California divorce court.

In 1996, Lynette lived in Alaska, and Joseph had moved to Kansas. In April, Joseph informed Lynette that he was planning to get married and that he would not be entering the Marines. Shortly thereafter, B.P. went to stay with Lynette for 6 months, consistent with the 1993 custody order.

In August 1996, Lynette filed a motion with the California divorce court, requesting that Joseph's visitation under the 1995 custody order be clarified and spelled out for the parties' benefit. Joseph opposed the motion, contending that because he did not enter the Marine Corps, the 1993 order controlled, and he would have B.P.'s residential custody during school months.

Curiously and inexplicably, Lynette returned B.P. to Joseph in August 1996 so that B.P. could start school in Kansas.

It is apparent to this court after reading the transcript of the 1996 proceedings before the California court, that the hearing officer understood Lynette to have primary residential custody based upon the 1995 order and that the only issue pending was Joseph's

visitation. It serves no useful purpose to delve into the prolonged discussion between the hearing officer and the attorneys for Joseph and Lynette; it is sufficient for our purposes to simply note that the hearing officer was unequivocal that California would not decide the custody dispute between the parties and directed that they litigate the matter in either Alaska or Kansas, whichever of those states would be most appropriate. The hearing officer ordered that B.P. was to remain with Joseph until January 15, 1997, and then be returned to Lynette.

Joseph, upon returning to Kansas with B.P., immediately filed the underlying petition in this litigation, requesting a child custody determination. Upon Joseph's ex parte application, the district court granted him temporary custody of B.P. Lynette promptly filed a motion to set aside the temporary custody order, contending that

"if [the district court's order] extends [Joseph's] temporary custody past January 15, 1997, [the order] is in violation of the Uniform Child Custody Jurisdiction Act, K.S.A. 38-1313, as this Court's Order conflicts with the previous Order issued in California, and [Joseph] has alleged no change of circumstances which warrants a modification of that Order."

After Lynette's motion to set aside the temporary custody order was denied by the district court, she next filed a motion for reconsideration. The district court, after conferring with the California hearing officer and taking evidence, denied Lynette's motion.

Ultimately, after a full evidentiary hearing upon Joseph's petition, the district court concluded: (a) Joseph did not enter the United States Marine Corps, and the custodial arrangement agreed upon in 1993 should be followed, and (b) based upon the evidence presented, it would be in B.P.'s best interests that Joseph be the primary residential custodian.

At oral argument, Lynette's attorney conceded Kansas had jurisdiction under the Uniform Child Custody Jurisdiction Act but contended the district court abused its discretion in entering the temporary custody order. We lack jurisdiction to consider this issue because Lynette's notice of appeal is only from the district court's final decision dated October 14, 1997. See *Anderson v. Scheffler*, 242 Kan. 857, 861, 752 P.2d 667 (1988). In addition, there are two

other reasons we decline to consider this issue: The issue does not address a final order and was superseded by a final order.

Lynette also contends that the district court erred in finding that a material change of circumstances had occurred that warranted a change of B.P.'s residential custody. This contention contains a false premise and is otherwise fatally flawed. As we have noted, the district court reasoned under the evidence presented that Joseph already had primary residential custody under the 1993 agreement that was found to be controlling *and* that it was in B.P.'s best interests that Joseph have primary residential custody.

The district court's detailed findings of fact and conclusions of law in its final journal entry include the following:

"D. There is ambiguity in the **Stipulation Re: Modification of Custody** dated December 4, 1995. The parties did not litigate the issue of custody during the hearing before the Superior Court on October 22, 1996. During the hearing on October 22, 1996, Commissioner Anderson misconstrued the parties' agreement as set forth in the **Stipulation Re: Modification of Custody**, as he only considered paragraph 1 of that document when he stated Lynette had custody of [B.P.].

"E. As Joseph did not transfer to the United States Marine Corps, paragraph 3 of the **Stipulation Re: Modification of Custody** requires that the parties adhere to the custodial arrangement that is set forth in paragraph 6 of the **Attachment To Judgment.** Therefore, Joseph should have primary residential custody of [B.P.] during the school year, and Lynette should have generous periods of visitation during the child's summer vacation and holidays.

"F. After considering the testimony of witnesses and two home study reports, this Court further finds that it is in the best interests of [B.P.] that Joseph be the primary residential custodian, subject to Lynette's right to liberal periods of visitation."

The issue now raised on appeal by Lynette ignores the above findings. The district court found that the 1995 custody agreement was ambiguous and that the California hearing officer misconstrued that agreement when setting the visitation order in 1996. The district court went on to find that the 1993 agreement is determinative of where custody vested immediately prior to the Kansas litigation. Lynette's mantra continues to be that the 1995 custody order controls; that, however, flies in the face of the findings and conclusions of the district court from which there has been no issue raised or briefed by the appellant.

Of equal significance, Lynette also fails to recognize the alternative basis relied upon by the district court to support its custody order. Lynette's argument presumes the district court must find a material change of circumstance before custody could be modified. She is incorrect. As previously noted, there were no full blown evidentiary proceedings in either 1993 or 1995 concerning B.P.'s custody. Consequently, the district court may consider, based upon the totality of circumstances, what custody order would be in the best interests of B.P. See *Hill v. Hill*, 228 Kan. 680, Syl. ¶ 2.

Our standard of review is whether the district court abused its judicial discretion. See *Struble v. Struble*, 19 Kan. App. 2d 947, 948, 879 P.2d 37 (1994).

The evidence considered by the district judge included: the 1993 and 1995 agreements, including the ambiguity in the latter document; the fact that Joseph did not join the Marine Corps; the periods of time when B.P. lived with each of her parents; the fact that Lynette allowed B.P. to return to Kansas with Joseph in August 1996 to enroll in school; B.P.'s circumstances at home and school; and B.P.'s socialization with Joseph, other significant adults, and school children.

After considering the evidence shown by the record and the findings entered by the district court, we hold the district court did not abuse its discretion in deciding that it would be in B.P.'s best interests to be in Joseph's custody during the school term each year.

Affirmed.