(15 P.3d 359)

No. 84,868

BRADFORD M. JOHNSON, INDIVIDUALLY AND NATURAL GUARDIAN OF CORRINE LOUISE STEPHENSON-JOHNSON, *Appellant*, v. SHERRY M. STEPHENSON, *Appellee*.

Opinion filed December 8, 2000.

*Ronald W. Nelson* and *Joseph W. Booth*, of Rose & Nelson, of Overland Park, for the appellant.

*William J. Paprota*, of William J. Paprota, P.A., of Overland Park, for the appellee.

Before PIERRON, P.J., BEIER, J., and C. FRED LORENTZ, District Judge, assigned.

PIERRON, J.: This case arises out of a child custody case in Johnson County, Kansas District Court from a parentage action and the resulting custody agreement involving the parties in the Santa Fe, New Mexico District Court.

Corrine Louise Stephenson-Johnson was born on November 30, 1989, from a liaison between Bradford Johnson and Sherry Stephenson while both were living in France. In January 1990, Johnson filed a petition in the French courts to establish paternity. Three years later, the French court declared Johnson to be the father of Corrine. On December 31, 1992, Johnson, now a resident of Atlanta, Georgia, filed a petition for paternity and custody in the Santa Fe, New Mexico District Court where Corrine and Stephenson had lived since June 1992.

On March 31, 1993, the New Mexico District Court entered a final judgment, based on an agreement between the parties, that included a finding of parentage in favor of Johnson and setting forth a detailed parenting plan regarding custody and residency for the then 3-year-old Corrine. In the next few years, the New Mexico District Court entered numerous orders detailing various changes in the parenting time and conditions, and it was not unusual for the case manager to have daily contact with the parents over the parenting arrangements.

In July 1995, the parties stipulated to a second custody order in which it was agreed that Corrine would live primarily in Santa Fe,

New Mexico with Johnson and approximately 40% of her time with Stephenson, wherever she resided. The stipulation also provided that the parties anticipated further negotiations concerning residential custody after July 1996 and the case manager was to make a recommendation no later than June 1996.

As the case continued, the parties had extensive discovery that included psychological and other examinations. Among the evidence obtained from the mental health professionals was that Stephenson allegedly had a mixed narcissistic and borderline personality disorder and engaged in actions to alienate Corrine from her father.

Shortly before the July 1996 deadline set by the New Mexico court for the parties to arrive at a parenting plan, the parties agreed on a custody agreement entitled "Amended Parenting Plan." As a preface, the agreement states:

"This Parenting Plan is a product of negotiations between the parties and is intended to put to rest years of hostility and legal action between the parties and to reach a comprehensive solution believed by both parties to be in the best interests of their daughter, Corrine Louise Stephenson-Johnson ("Corrine"). Both parties commit themselves to making this agreement work and to cooperating in good faith toward raising of Corrine."

The crux of the custody agreement gave the parents joint custody of Corrine and implemented an unusual 3-year rotating residential custody arrangement. Johnson began with residential custody of Corrine from August 1996 through June 1999, and then Corrine would live with Stephenson for the next 3 years. The New Mexico District Court entered an order adopting the custody agreement.

In the course of negotiations on the custody agreement, Johnson told Stephenson that he was moving to Kansas with his family and Corrine. Johnson moved with Corrine to Johnson County, Kansas, in August 1996. After 6 months, Johnson filed a petition to establish a foreign judgment in Kansas and to make Kansas the home state for Corrine for all custody matters. In May 1997, the petition was granted.

Over the next year, the parties continued the litigation of the custody and visitation issues arising in the case. Among other things, the court established a visitation schedule and ordered var-

ious psychological evaluations. The catalyst for this appeal came on August 4, 1998, when Johnson filed a motion for sole custody of Corrine and to permit only supervised contact between Stephenson and Corrine. Over the next year, the court completed a custody evaluation of the parties, including various psychological evaluations and numerous motions and hearings.

The matter was tried to the court on June 28 and 29, 1999, and on August 3 and 4, 1999, during which the court heard testimony from numerous laypersons and experts. The trial court ultimately denied Johnson's motion. The court stated that K.S.A. 60-1610(a)(2) allows a court to change or modify any prior order of custody when a material change of circumstances is shown. The court then stated that K.S.A. 60-1610(a)(3) requires the court to determine custody or residency of a child in accordance with the best interests of the child. The court also recognized that K.S.A. 60-1610(a)(3)(A) states that if the parties have a written agreement concerning custody or residency, it is presumed to be in the best interests of the child but that the presumption may be overcome if the court makes specific findings as to why the agreement is not in the best interests of the child.

The court concluded it first needed to decide whether there had been a material change in circumstances. The court discussed at length several portions of the testimony and held the evidence indicated there had not been a material change in the circumstances that would allow the court to modify the custody agreement entered by the parties in New Mexico in 1996.

Johnson first argues the trial court erred in requiring a showing of a material change in circumstances before the court would alter the existing written custody agreement. Johnson states the custody agreement entered below was akin to a default proceeding, and, thus, no showing of a material change in circumstances was necessary. Johnson requests this court to reverse and remand to the trial court to consider the statutory factors listed in K.S.A. 1999 Supp. 60-1610(a)(3)(B) and make a finding of what is in the best interests of the child. Johnson states the trial court reviewed the entire body of evidence to determine if there existed a material change in circumstances regarding the written custody agreement

when it should have reviewed the evidence to determine what was in the child's best interests.

Child custody is one of the most difficult areas faced by a trial court. The paramount question for determination of custody as between the parents is what best serves the interests and welfare of the children. All other issues are subordinate thereto. See *Simmons v. Simmons*, 223 Kan. 639, 642, 576 P.2d 589 (1978).

Kansas law on a court's determination of child custody is clear. K.S.A. 1999 Supp. 60-1610(a)(3) requires a court to determine custody or residency of a child *in accordance with the best interests of the child.* However, the legislature has enacted specific legislation for a written custody agreement entered into by the parents. K.S.A. 1999 Supp. 60-1610(a)(3)(A) provides: "If the parties have a written agreement concerning the custody or residency of their minor child, it is presumed that the agreement is in the best interests of the child." Additionally, if the court does not accept the written agreement, the court is required to make "specific findings of fact stating why the agreement is not in the best interests of the child." K.S.A. 1999 Supp. 60-1610(a)(3)(A).

The language of K.S.A. 60-1610(a)(3)(A) concerning the presumption of a written custody agreement was added by the Kansas Legislature in 1983. See L. 1983, ch. 199, ¶ 1. The statute has remained virtually unchanged since its enactment. Yet, K.S.A. 60-1610(a)(3)(A) has been cited by only one Kansas decision, *In re Marriage of Bradley*, 258 Kan. 39, 899 P.2d 471 (1995), and that case did not substantively discuss the statute. In *Bradley*, the court stated it was unclear whether the parties resolved their disputes concerning custody and visitation prior to the entry of the divorce decree. The court found that even if the parties had executed an agreement, the presumption under K.S.A. 60-1610(a)(3)(A) would not apply because the agreement as reflected in the divorce decree contained no contingencies for one party moving out of state. As such, the court indicated there was no evidence at the time that either party was contemplating an out-of-state move. The court concluded there was no agreement on whether the best interests of the children would be served by moving with their mother out of state or by staying with their father. 258 Kan. at 42-43.

Equally clear in Kansas is the fact that any change of custody or residency is controlled by K.S.A. 1999 Supp. 60-1610(a)(2), which provides that "the court may change or modify any prior order of custody when a material change of circumstances is shown." What constitutes a material change in circumstances has been said to elude precise and concise definition. Rather, it involves an alteration and passage from one condition to another and requires consideration of a variety of factors or circumstances. See *In re Marriage of Thurmond*, 265 Kan. 715, 721, 962 P.2d 1064 (1998). A material change in circumstances has been defined as a change that " 'must be of a substantial and continuing nature as to make the terms of the initial decree unreasonable.' " 1 Elrod, Kansas Family Law Handbook § 13.043 (rev. ed. 1990); see *In re Marriage of Whipp*, 265 Kan. 500, 962 P.2d 1058 (1998).

In other words, we know it when we see it.

The material change in circumstances rule in K.S.A. 1999 Supp. 60-1610(a)(2) should be applied with due regard for the policies it was designed to further. Two principal policies are served by it. First, the emotional, intellectual, and moral development of a child depends upon a reasonable degree of stability in his or her relationships to important people and to his or her environment. Second, the courts typically favor the one-time adjudication of a matter to prevent the undue burdening of the courts and the harassing of parties by repetitive actions. See *Niedert and Niedert*, 28 Or. App. 309, 313, 559 P.2d 515, *rev. denied* 277 Or. 237 (1977).

The main thrust of the current argument is whether the court must make a finding that a material change of circumstances has occurred under K.S.A. 1999 Supp. 60-1610(a)(2) in order to modify the existing written custody agreement or whether the trial court can modify the agreement based simply on a finding that the modification is in the best interests of the children under K.S.A. 1999 Supp. 60-1610(a)(3). The first element in this statutory requirement is K.S.A. 1999 Supp. 60-1610(a)(3)(A)—a written custody or residency agreement is presumed to be in the best interests of the child. Kansas case law on the subject turns on the resolution of whether the prior custody proceedings were substantially developed and presented to the court or whether custody was arranged

by a written agreement and merely uncritically adopted by the court.

In *Hill v. Hill*, 228 Kan. 680, 685, 620 P.2d 1114 (1980), the court held:

"[W]here a custody decree is entered in a default proceeding, and the facts are not substantially developed and presented to the court, the trial court may later, in its discretion, admit and consider evidence as to facts existing at the time of the earlier order, and upon the full presentation of the facts the court may enter any order which could have been made at the initial hearing whether a 'change in circumstances' has since occurred or not." 228 Kan. at 685.

See *Rosenburg v. Rosenburg*, 6 Kan. App. 2d 882, Syl. ¶ 3, 636 P.2d 200 (1981).

Stephenson argues *Hill* is factually distinguishable from the instant case. In comparison to the present case, Stephenson argues in *Hill* there was no mention of prior evidentiary hearings, no court-ordered home studies or evaluations, and no appointment of a case manager; further the mother in *Hill* had already moved from the area at the time the agreement was approved by the court. Stephenson argues the trial court in *Hill* was "truly in the dark as to the circumstances existing at the time of the presentation of the settlement agreement for approval."

When the Supreme Court decided *Hill* in 1980, K.S.A. 60-1610 was substantially different than it is today. The legislature reworked K.S.A. 60-1610 in 1982. K.S.A. 1980 Supp. 60-1610 did not include the material change in circumstances rule which was added in 1982 in L. 1982, ch. 152 § 9 and did not include the presumption concerning written custody arguments added by the legislature in 1983 in L. 1983, ch. 199 § 1. Stephenson argues that if Johnson's arguments are followed, then the legislature created meaningless legislation by enacting K.S.A. 60-1610(a)(2) and (a)(3)(A). Johnson's argument appears to be that a parent can ignore a court-approved custody agreement, begin relitigating custody, and not be subject to any shifting of the burden of proof or be bound to produce evidence sufficient to overcome a statutory mandate for a material change in circumstances.

Another case decided by the Kansas courts prior to the 1982 and 1983 amendments to K.S.A. 60-1610 was *Anhalt v. Fesler*, 6 Kan.

App. 2d 921, 636 P.2d 224 (1981). There, the Court of Appeals extended the *Hill* doctrine to custody decrees entered upon written stipulation of the parties. The *Anhalt* court stated the custody decree was not a true judicial determination and was more akin to the award of custody in a default proceeding. 6 Kan. App. 2d at 924. The court stated:

"Where a custody decree is entered on written stipulation, and the facts are not substantially developed and presented to the court, the trial court may later, in its discretion, admit and consider evidence as to facts existing at the time of the earlier order, and upon the full presentation of the facts the court may enter any order which could have been made at the initial hearing whether a change of circumstances has since occurred or not." 6 Kan. App. 2d 921, Syl. ¶ 4.

Several other cases have interpreted *Hill*. We extended the *Hill* doctrine to child support in *Stovall v. Stovall*, 10 Kan. App. 2d 521, 522, 707 P.2d 1082 (1985). There, the court found a change in circumstances is not necessary, under *Hill*, when the issue being litigated has not previously been litigated.

In *In re Marriage of Kiister*, 245 Kan. 199, 202, 777 P.2d 272 (1989), the court again extended *Hill* to situations where the facts concerning visitation were not substantially developed and presented to the court. The court held that a district court retained the discretion to later consider those facts in modifying visitation rights. The parties in *Kiister* initially contested the custody and visitation determinations, but the evidence indicated the parties settled the matter and the proceedings moved through the court as an uncontested matter. The *Kiister* court stated that the overriding policy in Kansas is that child custody matters and visitation rights are to be determined in accordance with the best interests of the child. 245 Kan. at 203; see *Lamberson v. Lamberson*, 164 Kan. 38, 42, 187 P.2d 366 (1947). The *Kiister* court held the trial court erred in excluding evidence of the parties' actions prior to the divorce. 245 Kan. at 202-03.

*Kiister* dealt primarily with visitation rights. K.S.A. 1999 Supp. 60-1616(c) gives the court the ability to "modify an order granting or denying visitation rights whenever modification would serve the best interests of the child." Clearly, we are not dealing with the same type of hurdle present in custody modifications. The statutory

implication is that custody orders that are controlled by the material change in circumstances rule are intended to be more permanent than those concerning visitation.

In *In re Marriage of Perry*, 25 Kan. App. 2d 447, 962 P.2d 1140 (1998), the parties divorced in 1993, having one child born of the marriage. As far as evidence being presented to the court, the court stated: "As divorces go, this one was amicable, with the parties entering into a written stipulation that was approved by the California divorce court as to B.P.'s custody and the visitation rights of the parties." 25 Kan. App. 2d at 448. The 1993 agreement provided for a rotating 6-month residential custody schedule until the child was of school age, then she would live with the father during school and the mother during the summers. The parties executed a subsequent custody agreement in 1995 (because the father was contemplating joining the Marines) wherein it left undisturbed joint legal and physical custody, but provided the mother with primary residential custody in Alaska. After the father failed to join the Marines as conditioned in the 1995 agreement, the father, who was then a Kansas resident, sought enforcement of the 1993 agreement in Kansas.

After a full evidentiary hearing, the trial court in *Perry* found the condition had not come to pass, that the 1993 custody agreement should be followed, and that it was in the child's best interests that the father be the primary residential custodian. On appeal, the mother argued the trial court erred in finding that a material change in circumstances had occurred that warranted a change of the child's residential custody. The Kansas Court of Appeals found the mother's phrasing of the issue was flawed since the trial court never mentioned a material change of circumstances standard. The court stated:

"Lynette's argument presumes the district court must find a material change of circumstance before custody could be modified. She is incorrect. As previously noted, there were no full blown evidentiary proceedings in either 1993 or 1995 concerning B.P.'s custody. Consequently, the district court may consider, based upon the totality of the circumstances, what custody order would be in the best interests of B.P. See *Hill v. Hill*, 228 Kan. 680, Syl. ¶ 2." 25 Kan. App. 2d at 451.

Courts in other jurisdictions have resolved the tension between the material change in circumstances rule and the best interests of

the child in two ways. Each approach has its problems. Some states have abolished the "substantial change" rule entirely. In those states, the only issue in a modification action is whether the change in custody would be in the best interests of the child. See *Friederwitzer v. Friederwitzer*, 55 N.Y.2d 89, 447 N.Y.S.2d 893, 432 N.E.2d 765 (1982). That approach is consistent with the primary focus on the best interests of the child but does not address the fact that the threat of litigation itself may undermine the stability of custodial relationships. See Wexler, *"Rethinking the Modification of Child Custody Decrees,"* 94 Yale L.J. 757 (1985).

Kansas and other states have concluded that the material change in circumstances rule should not apply to decrees resulting from default or stipulation. See *Hill*, 228 Kan. at 685; *Anhalt*, 6 Kan. App. 2d 921, Syl. ¶ 4. The Washington Supreme Court, for example, has held that the rule should not apply to unlitigated decrees because of the continuing paramount concern for the best interests of the child:

"A couple should not be able to foreclose judicial inquiry into facts which may assist in making the critical determination of how a child's interests would best be served, by agreeing as to who should receive original custody. ° ° ° '[T]he primary concern of the courts is always the welfare of the child. It would be unrealistic to assume that this concern can be served as well by a court which does not hear evidence and does not have an opportunity to observe both parents as it can by one in which the right of one parent to custody is contested by the other.' " *In re Marriage of Timmons*, 94 Wash. 2d 594, 598-99, 617 P.2d 1032 (1980), quoting *In re Rankin*, 76 Wash.2d 533, 537, 458 P.2d 176 (1969).

Custody decrees are not always adjudicated, and when they are not, the res judicata policy underlying the material change in circumstances rule in K.S.A. 1999 Supp. 60-1610(a)(2) is not very persuasive. See *Hill*, 228 Kan. 680, Syl. ¶ 1 (the doctrine of res judicata is not to be applied with the same strictness in child custody matters as it is applied in other civil litigation). Even more importantly, an unadjudicated custody decree is not based on an objective, impartial determination of the best interests of the child. When a child's custody is determined by stipulation or default, the custody determination may in fact be at odds with the best interests of the child.

The involvement of parents in the resolution of domestic matters is of great importance. It is well settled that divorcing spouses have more flexibility in crafting their own property settlement agreements than do courts. See *Mundon v. Mundon*, 703 N.E.2d 1130, 1134 (Ind. App. 1999). Parents' active participation in authoring their own justice should promote a spirit of cooperation that is best for everyone involved. Unfortunately, as is clearly evident in the present case, cooperation is not always the result. Negotiation of a divorce and custody settlement can be as contentious and bitter as any litigated proceeding.

When based on a stipulation or default, a custody decree may reflect such inappropriate factors as improper influence exercised by one parent over the other or a temporary loss of resolve by one parent caused by stress, guilt, or financial distress or the unwillingness of the parent to subject his or her child to a custody battle that causes that parent to give in to the demands of the other. In such a circumstance, the best interests of a child may be overcome by other issues. Whether the best interests of the child are in fact served by a custody arrangement determined by stipulation or default, therefore, is sometimes only fortuitous. By contrast, a judicial determination of custody based on the child's best interests is hopefully based on an objective and impartial comparison of the parenting skills, character, and abilities of both parents in light of a realistic and objective appraisal of the needs of a child.

The primary focus of the court in custody litigation must be on the best interests of the child. *Hill* and its progeny hold it is inconsistent with the court's primary responsibility to protect the best interests of the child to allow the parties, by initial agreement as to custody, to evade judicial inquiry into facts relevant to a custody decision. However, if the facts in a custody determination are substantially developed and presented to the court, and the court approves of the written custody agreement, then the protective provisions of K.S.A. 1999 Supp. 60-1610(a)(3)(B) are activated. Consequently, such a custody agreement is presumed to be in the best interests of the child and, as such, the provisions of K.S.A. 1999 Supp. 60-1610(a)(2) would prohibit alteration or modification

of the custody agreement unless the petitioning party could prove that a material change in circumstances has occurred.

The facts in the case at bar are not comparable to *Hill* or any of its progeny. The custody litigation in the New Mexico District Court was extensive and bitter for several years before the court entered the custody agreement allowing for the 3-year rotating residence schedule. It is unrealistic to argue the New Mexico District Court was not substantially aware of the important facts of this case prior to its approval of the 1996 custody agreement.

We note this was not the first custody agreement entered into by the parties but was in fact the third. Prior custody agreements had been entered by the court in 1993 and 1995. Also, the record is replete with psychological interviews and evaluations, doctors' affidavits, findings of fact and conclusions of law by the district court, and court-ordered mediation which all occurred prior to the adoption of the 1996 custody agreement. Finally, pursuant to the parties' first custody agreement in 1993, the court appointed a court monitor—the equivalent of a case manager in Kansas. The court monitor was specifically ordered to monitor Corrine's welfare.

We find the trial court did not err in analyzing this case under the material change of circumstances rule in K.S.A. 1999 Supp. 60-1610(a)(2). The purpose behind the material change in circumstances rule is, ultimately, to promote the best interests of the child. When a trial court is substantially aware of the facts prior to approval of a written custody agreement and approves the same, the approved agreement is presumed to be in the child's best interests. We emphasize that trial courts in those circumstances are obliged to consider material changes in circumstances when deciding whether a change of custody is appropriate. Many things can constitute such changes. This approach should provide the necessary flexibility to safeguard the true best interests of the child.

We do not find the 3-year rotating residency schedule to be facially invalid. Considering the midwest and the east coast locations of the parents, a 3-year rotating residency schedule is understandable. The custody agreement creates some semblance of stability for major periods of Corrine's youth. The custody agreement

provides that the first 3-year period for Corrine's first three primary school years would be with Johnson, the second 3-year period for Corrine's second three primary school years would be with Stephenson. The next 3-year period with Johnson corresponds to Corrine's middle school years, and her last 3-year period with Stephenson corresponds to her high school years.

Johnson also argues the trial court abused its discretion by enforcing the agreement where there was overwhelming evidence that the change would be adverse to Corrine's best interests.

Johnson states that throughout the trial court's decision, the court noted serious concerns about Stephenson's psychological state, her ability to deal with and observe interpersonal sexual and parental boundaries between herself and Corrine, continuing and considerable inappropriate expressions of hostility towards Johnson, and her "priming" Corrine and her son Matthew to sway the experts and the court in Stephenson's favor. Johnson also states the court accepted the opinion of the court-appointed psychologist that it was in Corrine's best interests to remain with Johnson, but indicated that such a finding was not a sufficient change in circumstances to overcome the presumption favoring enforcement of the previously entered custody agreement. The court indicated that Johnson's parenting skills were good and had improved greatly, but the hostility and anger exhibited by Stephenson had consistently increased since the custody agreement.

Stephenson cites testimony from Dr. John Spiridigliozzi, a psychologist, who testified on her behalf. Dr. Spiridigliozzi testified that Stephenson did not suffer from any personality disorders, that she experienced typical situational anger from the custody dispute, and that she had good child rearing skills, understood her daughter's needs, and provided Corrine with multiple growth-producing opportunities.

Dr. Spiridigliozzi also testified concerning Corrine. He said that she is an intelligent, mature, high-functioning girl who is very close to her mother, and that she was not obsessed with either removing herself from her father or protruding herself into her mother's life for the next 3 years.

Whether a child custody order will be changed or modified rests in the sound judicial discretion of the trial court. *Richardson v. Richardson*, 211 Kan. 172, 172-73, 505 P.2d 690 (1973). As in all child custody cases, a district court's decision should not be disturbed unless it has abused its discretion. *Dickison v. Dickison*, 19 Kan. App. 2d 633, 638, 874 P.2d 695 (1994). Discretion is abused when no reasonable person would take the view adopted by the trial court. *Smith v. Printup*, 262 Kan. 587, 592, 938 P.2d 1261 (1997).

Actions relating to the custody of children are predominantly factual, and decisions are wisely left to the sound discretion of the trial court. See *In re Marriage of Talkington*, 13 Kan. App. 2d 89, 93, 762 P.2d 843 (1988). In *Simmons v. Simmons*, 223 Kan. 639, 643, 576 P.2d 589 (1978), the Kansas Supreme Court stated:

"The trial court is in the most advantageous position to judge how the interests of the children may best be served. [Citations omitted.] While an appellate court has only the printed page to consider, the trial court has the advantage of seeing the witnesses and parties, observing their demeanor, and assessing the character of the parties and quality of their affection and feeling for the children. [Citation omitted.]"

Our standard of review is to determine whether the trial court abused its discretion in finding that a material change of circumstances had not occurred since the New Mexico District Court entered the custody agreement in 1996. The trial court gave much credence to the fact that the parties knew the entire situation when they executed the 1996 custody agreement and, as discussed above, the New Mexico District Court was equally aware. After a complete review of the record, we find no such abuse of discretion by the trial court. There was substantial competent evidence that there had not been changed circumstances of such a nature to rebut the appropriateness of the current child custody order.

Affirmed.