NOT DESIGNATED FOR PUBLICATION

No. 112,960

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

REBECCA ANN DUCKWORTH (DAVISON),
*Appellant*,

and

BILLIE LEE DUCKWORTH,
*Appellee*.

MEMORANDUM OPINION

Appeal from Johnson District Court; CHRISTINA DUNN GYLLENBORG, judge. Opinion filed September 18, 2015. Reversed and remanded.

*Christopher T. Wilson*, of Beam-Ward, Kruse, Wilson & Fletes, LLC, of Overland Park, for appellant.

*Allison G. Kort* and *Dana L. Parks*, of Hubbard, Ruzicka, Kreamer & Kincaid L.C., of Olathe, for appellee.

Before MALONE, C.J., ARNOLD-BURGER, J., and JOHNSON, S.J.

ARNOLD-BURGER, J.: Rebecca Ann Davison, formerly known as Rebecca Ann Duckworth (Rebecca), divorced Billie Lee Duckworth (Billie) in 2004. Billie subsequently married Kay Christopher (Kay). Kay owns a business called EFD Mailing. In 2008, while seeking modification of Billie's child support income, Rebecca attempted to subpoena business and financial records from both Kay and her business. Billie objected to the subpoenas, but before the district court considered the issue, the parties

1

reached a settlement. In 2012, after Billie filed a motion to modify the prior orders, Rebecca again attempted to subpoena the same information. Billie again objected, this time arguing that the earlier settlement barred Rebecca's relitigation of the subpoena issue under the doctrine of res judicata. The district court agreed, quashing the subpoenas and later denying Rebecca's motion for reconsideration. Rebecca now appeals. Because we find that the district court erroneously applied the doctrine of res judicata to quash Rebecca's subpoena request, we must reverse the district court's order and remand for further consideration of her request.

FACTUAL AND PROCEDURAL HISTORY

Rebecca filed for divorce from her husband Billie after 7 years of marriage. At the time, Rebecca was not commercially employed, and the couple had three minor children aged 7 and younger. After quite a bit of litigation, Rebecca and Billie reached a settlement agreement on all issues, and the district court entered orders commemorating these agreements.

At some point in the next few years, each party remarried. Billie's second wife, Kay, is a nurse anesthetist and also the owner of a company called EFD Mailing. At one point, Billie owned a company with the same name, but he closed it after about a year of operation because it failed to generate self-sustaining income. But when he closed the business, there remained "literature . . . that had still been printed that hadn't been utilized." In 2006 and with Billie's blessing, both Kay and another individual began using the old literature for their business entities, which they each called EFD Mailing. Kay operated her version of EFD Mailing "independently of the business that [Billie] had originally started." After a time, Kay hired Billie as operations manager.

In 2008, 4 years after the divorce, Rebecca filed a motion for modification of child support. She alleged that the passage of time, ages of the children, and a change in the

2

Kansas Child Support Guidelines required the district court modify the previous child support order. Rebecca also sought financial records from EFD Mailing, another company called Seal Co., Billie, and Kay.

Upon receiving notice of the business record subpoenas Rebecca intended to file, Billie objected. He argued that he no longer owned either EFD Mailing or Seal Co. and that Kay's personal financial records were irrelevant to the issue of child support. Billie also filed counter-motions for modification to his child support obligation and parenting time.

The parties reached a settlement on these issues in July 2009. Per the agreement, which the district court approved and memorialized in a journal entry, Billie's child support obligation remained the same but his parenting time increased. The journal entry specifically noted that the parties had "reached settlement on all issues set out in the pending Motions."

A few years later, in 2012, Billie moved to modify the July 2009 order. Rebecca replied to his motion and filed a counter-motion for modification of custody, parenting time, and child support. Rebecca alleged several changes in circumstances justifying modification of the previous orders, including an increase in Billie's income.

Like in 2008, Rebecca also sought discovery of Kay and EFD Mailing's financial records. Billie objected and moved to quash the subpoenas Rebecca filed, arguing that the parties had previously litigated the relevance of Kay's income and EFD Mailing's financials.

At a hearing on discovery, Rebecca again justified her request for Kay's information, saying, "[Kay] is now the owner of EFD Mailing, and there may be some financial information relevant to the modification of child support." Billie countered that

3

the issue of "whether or not [Kay's] income and this EFD business or company was in any way relevant" had been fully considered as part of the July 2009 settlement when, according to Billie, they "agreed that [Kay's] income and, you know, EFD as a separate entity was not something that was relevant to [Billie's] child support obligation." Because the parties settled and Rebecca failed to allege any change in EFD Mailing's ownership or operation, Billie reasoned that res judicata barred reconsideration of the issue. Rebecca, however, argued that the issue was never fully litigated but simply settled, placing it outside res judicata's reach.

But the district court ruled in Billie's favor and applied the doctrine of res judicata. The district court reasoned that Kay's financial records were "not relevant and . . . not subject to discovery" as they constituted "issues that were raised in 2009 that [were] resolved by agreement of the parties." Because Billie was "simply an employee" of his wife's business, the district court categorized Rebecca's subpoenas as a fishing expedition and quashed them.

Rebecca responded to this ruling by filing a motion for reconsideration, to alter or amend, or for relief from the judgment. There, she argued that the district court improperly applied the doctrine of res judicata and that the order entered pursuant to the settlement did not constitute a final decision on the merits. Billie, on the other hand, insisted that the July 2009 order resolved the issue of Kay's and EFD Mailing's finances and that Rebecca failed to assert any change in circumstances justifying its relitigation.

The district court denied the motion to reconsider, holding that the July 2009 settlement included the issue of Kay's finances. Although the district court recognized that it did not know the exact details of the parties' agreement, it determined that "it is clear that [the issue] was settled." Therefore, the district court found that "the issue is *res judicata* unless there is a change in these circumstances, which has not been alleged."

4

Moreover, the district court noted that reopening an issue that the parties voluntarily settled would undermine the finality of settlements as a whole.

The district court entered its final order on the motion to modify child support in November 2014. In that order, the district court adopted the findings of a hearing officer and reduced Billie's child support obligation. Rebecca timely appealed.

ANALYSIS

On appeal, Rebecca contends that the district court incorrectly applied the doctrine of res judicata to preclude her from subpoenaing Kay's and EFD Mailing's business records. Rebecca argues first that the district court applied the wrong standard, but also claims that even when considered under the correct standard, the July 2009 order did not preclude her pursuing the issue nearly 5 years later.

A district court's child support award is generally reviewed for an abuse of discretion. *In re Marriage of Thomas*, 49 Kan. App. 2d 952, 954, 318 P.3d 672 (2014). In terms of modifying a child support award, an appellate court also reviews a trial court's decision on whether the moving party showed the required material change in circumstances for an abuse of discretion. See *In re Marriage of Schoby*, 269 Kan. 114, 120-21, 4 P.3d 604 (2000). But the essence of Rebecca's appeal is the applicability of res judicata in this case and that is a question of law over which this court exercises unlimited review. See *Knowles v. Fleetwood Motorhomes of California, Inc.*, 40 Kan. App. 2d 573, 577, 194 P.3d 38 (2008).

The doctrine of res judicata prevents parties from relitigating claims and issues that have previously been decided and ruled on. See *Jackson Trak Group, Inc. v. Mid States Port Authority*, 242 Kan. 683, 690, 751 P.2d 122 (1988). In Kansas, this doctrine embraces two distinct concepts:  claim preclusion and issue preclusion (also called

5

collateral estoppel). 242 Kan. at 690. The former "prevents parties from relitigating a cause of action that has been finally adjudicated," while the latter "prevents relitigation in a different claim of issues conclusively determined in a prior action." 242 Kan. at 690. Each type of preclusion can only be invoked upon the showing of certain prerequisites or conditions. 242 Kan. at 690.

But as a general principle, res judicata "is not relevant to decrees awarding custody and providing for the support of minors." *Wheeler v. Wheeler*, 196 Kan. 697, 704, 414 P.2d 1 (1966). Instead, "[s]uch decrees become *res judicata* only as to matters then determined and as of the time the decree was rendered." 196 Kan. at 704. This general concept is embraced by the statutes that provide for modifications of child support, custody, residency, and parenting time orders. These statutes grant the district court continuing jurisdiction to modify orders, but require a material change in circumstances to do so. Otherwise, if the moving party cannot prove that the situation has changed, modification is barred and the previous order stands. See K.S.A. 2014 Supp. 23-3005(a); K.S.A. 2014 Supp. 23-3218(a). To put these concepts more fully in the context of res judicata: certain domestic orders may be relitigated and modified only when the facts and circumstances underlying the original order have changed in some significant way. See *In re Marriage of Whipp*, 265 Kan. 500, 506, 962 P.2d 1058 (1998). If the facts and circumstances remain the same as when the order was entered, however, res judicata applies and modification is barred. See *Wheeler*, 196 Kan. at 704.

But when these orders are not fully adjudicated before the district court, "the res judicata policy underlying the material change in circumstances rule . . . is not very persuasive." *Johnson v. Stephenson*, 28 Kan. App. 3d 275, 284, 15 P.3d 359 (2000) (specifically discussing child custody determinations), *rev. denied* 271 Kan. 1036 (2001). For several years, our Kansas Supreme Court held that a judgment was conclusive not only "as to matters and facts which were actually litigated and determined" but to "everything incidental thereto, and which properly could have been litigated with due

6

diligence." *Hardman v. Hardman*, 203 Kan. 825, 827, 457 P.2d 86 (1969). But the court subsequently modified this rule, holding:

> "[W]here a custody decree is entered in a default proceeding, and the facts are not substantially developed and presented to the court, the trial court may later, in its discretion, admit and consider evidence as to facts existing at the time of the earlier order, and . . . the court may enter any order which could have been made at the initial hearing whether a 'change in circumstances' has since occurred or not." *Hill v. Hill*, 228 Kan. 680, 685, 620 P.2d 1114 (1980).

In other words, the district court has discretion to consider previously unlitigated issues and enter orders on those issues regardless of whether the moving party demonstrates the required material change in circumstances. 228 Kan. at 685. And subsequent to our Supreme Court announcing this rule, this court extended its holding: once to apply it to cases in which the parties entered into a written custody stipulation, and again to apply it to issues concerning child support as well as child custody. See *Stovall v. Stovall*, 10 Kan. App. 2d 521, 521-22, 707 P.2d 1082 (1985); *Anhalt v. Fesler*, 6 Kan. App. 2d 921, Syl. ¶ 4, 636 P.2d 224 (1981).

But although these rules were first established roughly 30 years ago, a more recent case helps to clarify the interplay between domestic settlement agreements, res judicata principles, and the material change in circumstances rule. There, two unmarried parents entered into multiple custody agreements while living in New Mexico. Two years after the court adopted their most recent agreement, however, the father (who had moved) filed a motion for sole custody of the couple's daughter. But the Kansas district court that heard the case denied the motion, finding that no material change in circumstances justified altering the prior, agreed-upon order. *Johnson,* 28 Kan. App. 2d at 278.

In affirming the district court, this court first discussed the unique aspects of child custody agreements, including that they are statutorily presumed to be in the child's best

7

interests. 28 Kan. App. 2d at 280. Then, this court moved to the more central matter: whether the material change in circumstances rule must be applied in cases where the parties enter into a custody agreement. Describing our prior Kansas caselaw as turning on "whether the prior custody proceedings were substantially developed and presented to the court or whether custody was arranged by a written agreement and merely uncritically adopted," this court looked to *Hill* and other cases like it for guidance. *Johnson*, 28 Kan. App. 2d at 280-81. Additionally, the court analyzed the need for district courts to serve a protective role in child custody determinations, especially when the custody arrangement arises from an agreement. As the court observed:

"The involvement of parents in the resolution of domestic matters is of great importance. It is well settled that divorcing spouses have more flexibility in crafting their own property settlement agreements than do courts. [Citation omitted.] . . . Unfortunately, as is clearly evident in the present case, cooperation is not always the result. Negotiation of a divorce and custody settlement can be as contentious and bitter as any litigated proceeding.

"When based on a stipulation or default, a custody decree may reflect such inappropriate factors as improper influence exercised by one parent over the other or a temporary loss of resolve by one parent caused by stress, guilt, or financial distress or the unwillingness of the parent to subject his or her child to a custody battle that causes that parent to give in to the demands of the other. In such a circumstance, the best interests of a child may be overcome by other issues." 28 Kan. App. 2d at 285.

But despite finding an inherent tension between parents' motivations to enter into custody agreements generally and a child's best interests, this court determined that the rationale in *Hill* and its progeny did not actually apply in that particular case. 28 Kan. App. 2d at 286. Instead, this court determined that the parties had engaged in "extensive and bitter" litigation in New Mexico sufficient to develop and apprise the court of all the relevant facts. 28 Kan. App. 2d at 286. Accordingly, this court found no error in applying

8

the material change in circumstances rule to bar modification of the order. 28 Kan. App. 2d at 286.

Obviously, a child custody determination differs substantially from one concerning child support. After all, our Kansas statutes clearly state that any child custody determination must be in the child's best interests. K.S.A. 2014 Supp. 23-3201. Child support, on the other hand, is determined by applying the Kansas Child Support Guidelines (2014 Kan. Ct. R. Annot. 127), and there is no explicit statutory requirement that the support amount be in the child's best interest. That said, however, any order establishing child support necessarily implicates the child's best interests; after all, the statute authorizing both child support itself and our Kansas guidelines behooves the court to consider the child's needs and circumstances. See K.S.A. 2014 Supp. 20-165; *Matter of Marriage of McNeely*, 15 Kan. App. 2d 762, 768, 815 P.2d 1125 (finding that awarding child care costs independently of the guidelines "springs from the inherent power of the court to enter whatever order it deems is in the 'best interests of the children'"), *rev. denied* 249 Kan. 776 (1991). And even without the express best interests language, the concerns this court expressed in *Johnson* are still valid when considering issues of child support. After all, a stipulation or agreement in a child support context may easily be the result of a bitter, contentious fight or of a "temporary loss of resolve" on the part of one parent. 28 Kan. App. 2d at 285. And while it is true that the protective role of the district court is somewhat less onerous when considering child support issues, concerns still arise when a support order is "arranged by a written agreement and merely uncritically adopted." 28 Kan. App. 2d at 280-81.

Clearly, the problem of uncritical adoption exists here. Nothing in the order from 2009 indicates the exact nature of the parties' agreement on the issue of the subpoenas. The district court recognized this fact in its order denying the motion to reconsider, noting that "the Court is not privy to what the agreement on [the subpoena] issue was" while still finding that the parties settled the dispute. The only reference to the actual

9

content of the settlement came during a motion hearing, when Billie proffered that the agreement included "that [Kay's] income and, you know, EFD as a separate entity was not something that was relevant to [Billie's] child support obligation." But this single reference is a far cry from the substantial development and presentation of facts envisioned in *Hill* and its progeny. See 228 Kan. at 685. In fact, a review of the record indicates that this particular dispute concerning the subpoenas was not developed at all.

Obviously, *Hill* holds that the district court's decision to consider undeveloped issues absent a change in circumstances is a discretionary one. 228 Kan. at 685. But a district court abuses its discretion when it commits an error of law or fails to consider the proper legal standards. See *Graham v. Herring*, 297 Kan. 847, 855, 305 P.3d 585 (2013); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013). Here, the district court applied res judicata without considering the many unique aspects of this doctrine in domestic cases. It therefore cannot fairly be said that the district court considered the proper legal standards. Moreover, an unlimited review of the res judicata issue demonstrates that applying res judicata in this case was inappropriate. And this inappropriateness is compounded by the fact that Rebecca alleged that Billie's income changed and that she believed there to be information in the business relevant to Billie's child support obligation. In short, even if the district court's failure to recognize the applicability cases like *Hill* and *Johnson* did not constitute an error of law, Rebecca's allegations required that the district court consider whether the facts and circumstances underlying the settlement had changed sufficiently to prevent application of the doctrine. See *Wheeler*, 196 Kan. at 704. The district court failed to consider these allegations when denying the motion.

In conclusion, the district court erred when it applied the doctrine of res judicata to the issue of the business records subpoenas. By failing to consider the unique operation of res judicata in domestic cases, the district court committed an error of law. It also failed to determine whether Rebecca's allegations constituted a material change in

10

circumstances, or whether the undeveloped facts underlying the subpoena claim justified rehearing the issue without such a change. Under *Hill* and other cases like it, this failure is an abuse of discretion. The district court's decision must therefore be reversed and remanded for further proceedings.

Reversed and remanded.