No. 48,457

KATHLEEN V. SIMMONS, *Appellant,* v. JAMES J. SIMMONS, *Appellee.*

(576 P.2d 589)

Opinion filed April 1, 1978.

*John T. Conlee,* of Fleeson, Gooing, Coulson & Kitch, of Wichita, argued the cause, and *Richard I. Stephenson,* of the same firm, was with him on the brief for the appellant.

*Thomas C. Triplett,* of Martin, Pringle, Schell & Fair, of Wichita, argued the cause, and *Martin W. Bauer,* of the same firm, was with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, C.J.: This is an appeal by Kathleen V. Simmons (defendant-appellant), from the trial court's order changing custody of the parties' two minor children to James J. Simmons (plaintiff-appellee). The appellant contends the appellee failed to sustain the burden of proving a change in custody was necessary for the best interests of the children, and the trial court abused the exercise of its sound judicial discretion in ordering the change of custody.

On April 9, 1975, Kathleen v. Simmons (hereafter Vici) was granted a divorce from her husband James J. Simmons (hereafter Jim). Vici was awarded custody of the couple's two adopted children, Matthew who was then four years of age and Tracy who was then one year old.

Jim is the president and principal stockholder in the National Oil Company, an independent oil and gas producer in Wichita, Kansas. He is a millionaire by his own admission. In addition to their house and a cash settlement of $26,250, Vici was awarded alimony in the amount of $1,500 per month for a period of three years unless she died or remarried. If she remarried or at the end of three years, whichever occurred first, her alimony decreased to $1,000 per month to continue for six years. She was also awarded

$200 per month in child support for each child. Jim retained all the company stock.

Shortly after her divorce Vici began negotiations to purchase two Merle Norman Cosmetic Studios in Denton, Texas. She testified she wanted to secure an economically sound future for herself and for her children. Vici went to a training seminar for these businesses for three weeks in August and September of 1975. During this time she asked Jim to take care of both children. Jim kept Matthew; however, Tracy stayed with Vici's parents. Jim made trips to Dallas and Houston during this three-week period and left Matthew with a girl friend and another friend in Kentucky. As a result of this visit on September 15, 1975, Jim filed a motion for change of custody in order to obtain Matthew. He subsequently withdrew this motion.

Vici moved with the children to Denton, Texas, in October of 1975, where she purchased a three-bedroom home with a detached garage converted into an apartment. She testified she wanted to employ a live-in housekeeper/baby-sitter in order to insure that her children would be properly cared for while she was at work.

Unfortunately Vici had less than a perfect record with housekeepers. From October until mid-July, when this change of custody suit was heard, Vici hired five housekeepers. The first two ladies each remained for less than two weeks and left before Vici started to work full-time. In January of 1976 Merle Root was hired. She remained until Jim's motion to change custody was filed on March 10, 1976. After Mrs. Root left and before Dorothy Hunter, the last housekeeper, one employee left due to the emotional strain of the custody proceedings.

During this time Vici was also seeing Danny Blake. She met Danny when he was the assistant golf professional at the Rolling Hills Country Club in Wichita. The two became engaged after her divorce. Danny also moved to Denton, Texas, and began selling insurance. While he had his own apartment in Denton, he spent considerable time at Vici's and stayed overnight on numerous occasions. Apparently Vici's children were unaware of her sexual activities. Both Vici and Danny testified he stopped staying at Vici's house in March when it was suggested their relationship might jeopardize Vici's custody battle.

Jim Simmons visited his children on three separate occasions

after their move to Denton, Texas. On two of these trips he took his 24-year-old girl friend, Linda Vincent. Jim and Linda were living together in Wichita. On these visits Jim and Linda shared a single hotel room overnight with the children. The two adamantly deny sleeping together in front of the children. Linda testified during these visits Tracy appeared to be unclean and Matt was starved for affection and attention.

Jim filed this change of custody suit on March 10, 1976. On March 15, 1976, he and Linda Vincent were married.

The voluminous record in this case reveals considerable testimony of the parties and their respective friends and neighbors. Some of the testimony was conflicting. In granting Jim's motion for change of custody the trial court made the following findings:

"1. Plaintiff's business obligations give her little time with the children.

"2. Images of authority are necessarily confused in this complicated arena which can only be detrimental to the children. Who holds the parental image—various housekeepers—mother—fiance?

"3. Dan Blake did administer excessive corporal punishment to the minor daughter.

"4. The plaintiff and her fiance are trying to act out the role of mother and father without the benefit of marriage.

"5. The competency of all housekeepers hired by the plaintiff has to be considered below normal and the frequency of change has to be considered detrimental to the children.

"6. For all practical purposes Dan Blake is residing at the plaintiff's place of residence at least five days a week or more.

"7. There have been five different housekeepers in eight months taking care of the children.

"8. The present housekeeper is not keeping proper care of the personal needs of the minor daughter as evidenced by failure to change underclothing and chafing of vital areas.

"9. The deposition of Dan Blake must be considered a noncooperative one and for an individual who has taken over fatherly obligations it indicates a lack of cooperation to get at all of the truth in this matter.

"10. The plaintiff does not intend to let her children interfere with either her business or her private life.

"11. The defendant has remarried and established a household.

"12. The defendant has arranged his business affairs so he can spend a normal working father's time with the children and his present wife is not employed and would be at home to care for the children.

"13. The need of the children to identify themselves into a stable family situation is unquestionable and the defendant is in the best position to offer this stability.

"14. Parental authority in the home of the defendant would be more defined than it is in the home of the plaintiff. The present wife of the defendant is ready, willing and able to care for the minor children.

"15. The best interests of the children would be served if custody were changed, and it is hereby the order of the Court that the custody of the minor children be placed in the defendant, James J. Simmons. Mr. Simmons may proceed to Denton, Texas, and pick the children up on July 17th, 1976, at 10:00 a.m."

The appellant first contends the evidence was insufficient to sustain the appellee's burden of proving a change in custody was necessary for the best interests of the children.

The paramount question for determination of custody as between the parents is what best serves the interests and welfare of the children. All other issues are subordinate thereto. The court must determine which parent will do a better job of rearing the children and provide a better home environment. (*Parish v. Parish*, 220 Kan. 131, 551 P.2d 792 and cases cited therein.) The trial court may look at the availability and willingness of each parent to care for the children. (*Lewis v. Lewis*, 217 Kan. 366, 537 P.2d 204.)

In order to insure that the interests of the children are fully protected from an adverse change of circumstances, K.S.A. 60-1610(*a*) vests the trial court with continuing jurisdiction to modify a custody order. Therefore, a decree awarding child custody is *res judicata* with respect to the facts existing at the time of the decree. (*Lewis v. Lewis,* supra at 368.) However, when facts and circumstances change, custody may be changed. (*Lewis v. Lewis,* supra; and *Hardenburger v. Hardenburger,* 216 Kan. 322, 325, 532 P.2d 1106.)

Our court has repeatedly held the burden of proving a change in custody is warranted rests upon the movant. (*Lewis v. Lewis,* supra at 368; *Bergen v. Bergen,* 195 Kan. 103, 105, 403 P.2d 125; and *Kimbell v. Kimbell,* 190 Kan. 488, 376 P.2d 881.) Jim Simmons does not dispute that he had the burden of proving a change in custody was in the best interests of the children. To sustain his burden of proof Jim did not have to prove Vici was unfit to have custody of the children. (*Lewis v. Lewis,* supra at 369; *Hardenburger v. Hardenburger,* supra at 326; and *Gardner v. Gardner,* 192 Kan. 529, 533, 389 P.2d 746.) The question of unfitness arises only when the custody dispute is between one parent and a third party. (*Trompeter v. Trompeter,* 218 Kan. 535, 539, 545 P.2d 297; *Schreiner v. Schreiner,* 217 Kan. 337, 341, 537 P.2d 165; and *In re Eden,* 216 Kan. 784, 786, 533 P.2d 1222.) Instead, he had to show

a change in the parties' circumstances since the entry of the original custody order. (*Goetz v. Goetz,* 184 Kan. 174, 176, 334 P.2d 835.)

The trial court found Vici's business and social interests, after her divorce, had priority over her concern for her children as well as her willingness to devote attention to Matthew and Tracy. Jim, on the other hand, had remarried and he and his wife were willing and able to offer the children a more stable home environment. Thus, the evidence was sufficient to sustain Jim's burden of proving a change in circumstances.

The appellant also asserts the trial court abused the exercise of its sound judicial discretion in ordering a change in custody.

Certain basic principles apply in determining an abuse of the trial court's discretion. The question of a change of custody is addressed to the sound judicial discretion of the trial court and the appellate court's review of the trial court's determination is very limited. (*Lewis v. Lewis,* supra at 368.) The trial court is in the most advantageous position to judge how the interests of the children may best be served. (*Parish v. Parish,* supra at 133; and *Dalton v. Dalton,* 214 Kan. 805, 808, 522 P.2d 378.) While an appellate court has only the printed page to consider, the trial court has the advantage of seeing the witnesses and parties, observing their demeanor, and assessing the character of the parties and quality of their affection and feeling for the children. (*Greene v. Greene,* 201 Kan. 701, 704, 443 P.2d 263.) The judgment of the trial court will not be disturbed without an affirmative showing of an abuse in the exercise of discretion. In *Schreiner v. Schreiner,* supra at 343, our court defined abuse of discretion in custody battles as follows:

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds."

The appellant argues the trial court applied a discriminatory double standard in reaching its conclusions. She states under the trial court's double standard a working father may be away from the children during the day, but a working mother is prohibited

from doing exactly the same thing. Moreover, she claims the double standard applies with respect to the living arrangements and life styles of the parties.

After a careful review of the entire record we cannot say the trial court abused its discretion in its custody award. The trial court's numerous findings must be viewed in their proper perspective. The trial court was, in effect, faced with placing the children in the custody of a series of housekeepers or in the custody of the children's stepmother. While Vici had increased her working hours away from the children during the year after the divorce, Jim had hired additional personnel to increase the number of hours he could spend with Matthew and Tracy. Furthermore, the trial court also felt Jim could offer the greater stability in the home environment. Thus, no abuse of discretion is shown under the facts and circumstances involved.

The judgment of the lower court is affirmed.

HOLMES, J., not participating.