NOT DESIGNATED FOR PUBLICATION

No. 117,293

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

LEIGH ANN ZIEBART,
*Appellant,*

and

CHAD ZIEBART,
*Appellee.*

MEMORANDUM OPINION

Appeal from Meade District Court; SIDNEY R. THOMAS, judge. Opinion filed March 30, 2018. Reversed and remanded with directions.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Michael J. Giardine* and *Curtis E. Campbell*, of Curtis E. Campbell, Chrtd., of Cimarron, for appellee.

Before ATCHESON, P.J., BUSER, J., and BURGESS, S.J.

BUSER, J.: Leigh Ann Vermillion (formally Ziebart) (Mother) appeals from the district court's postdivorce changes in legal and residential custody involving the parents' minor child, T.Z. These court ordered changes were adverse to Mother's motion to modify the agreed upon parenting plan. Mother appeals the district court's orders with regard to legal and residential custody. In particular, she appeals the district court's order defining the parameters of joint legal custody and the district court's award of primary residential custody to Chad Ziebart (Father).

1

Upon our review, we reverse the district court's order which, although termed joint legal custody, is more akin to sole legal custody. Additionally, we reverse the district court's order awarding primary residential custody to Father. We remand with directions to reinstate the parents' agreed upon parenting plan which provided for joint legal custody and shared residential custody. We further direct the district court to file a journal entry providing that under the joint legal custody order, both parents shall consult with one another and have the decision-making authority for all major issues in raising T.Z., including but not limited to the child's education, medical care, welfare, and activities.

FACTUAL AND PROCEDURAL BACKGROUND

Father and Mother are the biological parents of their minor child, T.Z. The parties were married on August 8, 2009. In November 2011, Mother filed a petition for divorce. The couple entered into a separation and property settlement agreement wherein they agreed to joint legal custody and shared residential custody of T.Z., who was one and a half years old. The settlement agreement was adopted and incorporated into the divorce decree. Mother and Father lived in Meade, Kansas, until the divorce. About six months after the divorce, Mother moved to Plains, Kansas. Since the divorce both parents have remarried.

In August 2015, Mother filed a motion to modify the agreed upon parenting plan. In her motion, Mother sought to modify the existing parenting plan by "designating both parents as joint legal custodians with [Mother] as the residential parent." Mother stated that shared residential custody was no longer in the best interests of T.Z. because Father refused to communicate with her about various matters involving T.Z. These matters included disagreements about what school T.Z. would attend, transportation from school when T.Z. was residing with Father, and emotional problems exhibited by T.Z. when she returned from parenting time with Father.

2

Mother also prepared a proposed parenting plan which provided that T.Z. would reside with her, setting forth specified parenting times, and establishing methods for resolving parental disputes without court intervention. In response, Father asked the district court to deny Mother's motion and to "maintain the current custody and parenting time schedule, as it is in the best interests of [T.Z.]" On March 31, 2016, the district court held an evidentiary hearing on Mother's motion.

*Testimony Regarding Residential Custody*

At the hearing, Mother testified that it had been "getting tougher" to engage in equal parenting time since T.Z. reached school age. Mother stated that equal parenting time made it harder for T.Z. to engage in extracurricular activities which was exacerbated by communication issues and Father's inability to take necessary actions to allow T.Z. to engage in such activities. On the other hand, Father testified that a change of residence would not be beneficial to T.Z., stating that "[T.Z.] is excelling at everything, and making a change, taking her [F]ather out of her life more, is only gonna make it worse." For her part, Tiffany Ziebart (Stepmother) testified that she was not supportive of changing the shared time between the parents because she believes that "[T.Z.] would be heartbroken."

Mother's brother, Brian Deighton, testified that Mother and Father were both great parents and he did not believe that it would be appropriate to change the residential custody arrangement. According to Deighton, "it would be best for [T.Z.] to stay in the situation she is now in." Casie McAtee, a friend of the parties through Father's work, testified that Stepmother is "[v]ery caring and loving" and an "excellent stepmom." However, McAtee was concerned that T.Z. could be adversely affected by her parents' ongoing complaints. Justin Hegwood, Father's work supervisor, testified that Father does a "great job as a dad." Hegwood testified that it would be detrimental to change the shared time with T.Z. because T.Z. "loves [Father] and . . . she likes being there."

3

Rebekah Garrison, T.Z.'s former preschool teacher, testified that T.Z. gets along very well with other children, is an above average student, and Garrison was not aware of any problems that T.Z. had at home. Garrison was concerned, however, about changing T.Z.'s current residency arrangement. Stachia Conway, T.Z.'s kindergarten teacher, testified that T.Z. was at "the top of [her] class," with a cheerful personality. She did not notice any problems with T.Z regarding the residential arrangement. Jerrilynn Wood, the principal at T.Z.'s school, testified that she has been doing well under the shared residential custody arrangement. While Wood agreed that "younger children need stability of schedule and home rules more so than high school-aged children," she opined that "if [T.Z. is] doing well now, then I think that's what's most important."

*Testimony Regarding the Selection of a School*

Mother testified there was a "big fight" that lasted over a month because the parents wanted T.Z. enrolled in different schools. According to Mother, since Father did not enroll T.Z. at Meade when enrollment started, she enrolled T.Z in the school district where she resides and notified Father of her decision. Ultimately, T.Z. was enrolled in Kismet, which is about 7 miles from Mother's residence and 19 miles from Father's residence. Mother testified that although there were initial problems in transporting T.Z. from school when she was residing with Father, those problems had been alleviated.

Father testified that he tried to get Mother to agree to have T.Z. attend kindergarten in Meade. However, "[t]here was no way" that Mother was agreeable to allowing T.Z. to attend school in Meade. Father stated, "I got a text message one day that said, [T.Z.'s] pre-enrollment . . . is taking place . . . and I said, I take it you haven't switched your mind about school districts? Her response was no." According to Father, he is able to make the schooling arrangement work and there are no transportation problems.

*Testimony Regarding Parental Communications*

Mother testified that Father and she have difficulties communicating about decisions regarding T.Z. For example, Mother complained that Father had refused to provide her with information about a new daycare for T.Z. In particular, Mother claimed that she and Father have difficulties sitting down face-to-face to discuss issues about T.Z. However, there was evidence at trial that the parents were using text messaging to communicate regarding decisions involving their daughter. Mother denied that she was trying to mislead the court about the communication difficulties. For his part, Father responded that the parents frequently communicated in person, by phone, or by texts.

*District Judge's Findings at the Hearing*

At the conclusion of the hearing, the district judge stated he had "no doubt that the parents, as well as the stepparent, in this case love . . . [T.Z.] dearly, and what's unusual is that we have this much support coming from both parents." The district judge determined, however, that "the bottom line is . . . shared parenting takes a high degree of communication and cooperation between parents. It can be sabotaged by one parent, so I am not going to impose shared parenting on the parents."

The district judge found that Mother's testimony was "colored" and discounted some of her testimony as "not completely the whole truth." He found the evidence showed Father had "worked hard at being a parent and worked hard at trying to communicate, has tried to be there for his daughter as much as possible." Although the district judge was reluctant to change the shared residential custody, he highlighted Principal Wood's testimony "that younger children . . . need more stability." The district judge expressed concern that although Father wanted the shared parenting to continue, Father admitted he "can't sit down and have . . . a deep conversation with [Mother]—and that is an issue in shared parenting." The district judge commented that the parents know

5

what is in T.Z.'s best interests. He concluded, "[w]hat's the best for [T.Z.] is if you can both agree." The district court then ordered the parties to attend mediation, which was unsuccessful.

*Order Modifying the Parenting Plan*

In June 2016, the district court filed a written order modifying the parenting plan. The district court summarized Mother's position that due to T.Z. reaching school age "her activities have increased to such an extent that the shared parenting plan is no longer in [T.Z.'s] best interest." The district judge encapsulated Father's position that "equal parenting time is still in the best interest of their minor child" and he did "not want to risk harming [T.Z.] by changing the current parenting plan." The district judge found that Mother overstated her contentions causing them to be "factually inaccurate" and he surmised that "her motive for change in the parenting plan is more for her own personal convenience instead of the best interest of [T.Z.]"

With regard to enrolling T.Z. in school, the district court found that Mother "manipulate[ed] . . . the situation . . . to get her way." The district court further noted that "[Father] has been flexible in making things work, whereas [Mother] has not been so flexible." The district court found Father was credible and the "evidence shows that he was willing to go out of his way in making things work and trying to do what is best for [T.Z.]"

The district court summarized that "[a]ll the witnesses agreed that both parents are good and fit parents. However, most witnesses expressed concern of any changes in the parenting plan due to how well [T.Z.] had been doing under the current parenting agreement." In this regard, the district court emphasized Deighton's testimony, that the "best arrangement was the current equal parenting time plan." The district court found it significant that Deighton had a good relationship with both parents, and visited T.Z.

6

while she was with Father, noting that it showed Father "knows the importance of maintaining the good relationships [T.Z.] has with the maternal family." The district court also highlighted that Stepmother has a "good relationship with [T.Z.] and [Mother] as well," but expressed concern about the lack of testimony regarding the relationship between Mother's new husband and T.Z.

The district court concluded:

"[A]lthough there's much evidence to indicate that it may be in [T.Z.'s] continued best interest for the current parenting arrangement to continue, the Court will not impose that parenting plan on the parties due to the fact that [Mother] can sabotage that parenting plan by her lack of cooperation if she chooses. The Court finds that [Father] has advocated for the best interests of the child throughout this hearing and the case. As a result, the Court specifically finds that it is now in [T.Z.'s] best interest that the parenting plan be modified."

The district court placed T.Z. in "joint custody of her parents," but designated Father as the residential custodian parent. The district court explained:

"This means that [Father] should still seek agreement with [Mother] as to what is best for their child and that they need to continue to consult with each other in regard to all of [T.Z.'s] care and activities. However, if there is a disagreement, [Father] will have the authority to make the decision as to what is best for [T.Z.]"

*Mother's Motion to Alter or Amend*

Following this order, Mother filed a motion to alter or amend. In her motion, Mother first argued that while the district court stated it was ordering *joint* legal custody, in fact, by giving Father the authority to make unilateral decisions regarding T.Z.'s care when a disagreement arose between the parties, the court erroneously gave Father *sole* legal custody over the child. Next, Mother claimed the district court erred by "granting an

7

outcome that was not sought by either party." Finally, Mother asserted the district court's sua sponte ruling overhauling the prior agreed upon parenting order was not supported by the evidence.

In its order denying Mother's motion to alter or amend, the district court found:

"That due to self-imposed problems created by [Mother], a shared custody arrangement would not be in the child's best interests and finds that [Mother] was not completely honest at the trial on March 31, 2016, and that the evidence also showed that [Father] attempted to resolve the issues with [Mother]."

The district court also found that Mother has "manipulated the parenting situation to the point that shared custody [was] not feasible" and Mother's "true reason" for her motion was financial. The district court stated that "a shared custody arrangement was not in the best interests of the minor child due to potential sabotage on the part of [Mother]." On the other hand, the district court found that Father had "gone out of his way to maintain a positive interaction with the maternal family."

The district court determined it had jurisdiction to "order a parenting plan that the Court determined to be in the best interests of the minor child" because the issue before the court was a motion to modify the parenting plan. Next, the district court clarified that it placed T.Z. in joint legal custody of both parents as opposed to sole legal custody of Father. The district court explained that both parents are

"to keep each other informed and consult with the other parent as to what activities are best for their child and work together toward reaching an agreement on what those activities should be. However, if they cannot agree, the court further clarified that the parent with whom the child is residing has the ability to have the final say on what activities the child is involved in while [T.Z.] is with that parent."

The district judge provided an example of how he understood the joint legal custody agreement would work with regard to T.Z.'s schooling:

"As the court had previously noted, the child grew up in Meade but as a result of [Mother's] move to Plains and her manipulation of the situation, the child attended school in that school district. Now that [Father] has residential custody during school time, he indicated his preference for their child to go to Meade. [Mother] indicated her preference was their child goes to school where [Mother] lives. Since the child is living with [Father] during school hours, this [is] an example where [Father's] preference has priority."

A court ordered parenting plan was incorporated in the district court' order. The district court granted the parents joint legal custody; "[h]owever, [Father] shall have final say in any child rearing decisions."

Mother timely appealed the adverse rulings. On appeal, Mother contends the district court abused its discretion on multiple grounds in its rulings awarding legal custody and residential custody. We will separately consider these issues.

*Subsequent District Court Journal Entry*

After oral arguments on appeal, the parties filed a joint motion to supplement the record by adding a journal entry filed on October 2, 2017. Our court allowed the supplementation. In the journal entry, the district court sought to explain its prior orders. The district court acknowledged an inconsistency in its journal entry pertaining to joint legal custody and the provision in the new parenting order pertaining to joint legal custody. The district court explained:

"[T]he Court wants to clarify that its intent with its order was to place the minor child in the joint legal custody of both parties but if there is a conflict as to the child's activities, . . . that the party whomever has the physical custody of the minor child should

9

be the party to make the final decision regarding the activities of that child at that particular time."

## AWARD OF SOLE LEGAL CUSTODY AND PRIMARY RESIDENTIAL CUSTODY WITHOUT A MOTION OR CHANGE IN CIRCUMSTANCES

For her first issue on appeal, Mother contends the district court's orders giving Father what is, in essence, sole legal custody and primary residential custody of T.Z. were based on errors of law. Mother argues there was no legal basis for the district court to order these changes in custody to a parent who did not make a motion or request such changes. Mother also claims that, under K.S.A. 2016 Supp. 23-3218, in order for the district court to change legal or residential custody "the *movant* must show that there has been a material change in circumstances."

Father counters that the district court was permitted to award legal and residential custody in his favor because Mother brought the matter to district court by filing a motion to change the parenting plan. He also reasons that the burden was on the district court to determine the best interests of the child and it was not his responsibility to prove a material change in circumstances. As a result, regardless of the parent who filed the motion, the district court was permitted to award Father legal or residential custody by determining the best interests of the child. We will consider both aspects of Mother's argument separately.

Preliminarily, a brief summary of our standards of review is necessary. A district court's order granting or denying a modification to a child custody order will not be disturbed in the absence of an abuse of discretion. *In re Marriage of Grippin*, 39 Kan. App. 2d 1029, 1031, 186 P.3d 852 (2008).

"Judicial discretion is abused if judicial action (1) is arbitrary, fanciful, or unreasonable, *i.e.*, if no reasonable person would have taken the view adopted by the district court; (2)

10

is based on an error of law, *i.e.*, if the discretion is guided by an erroneous legal conclusion; or (3) is based on an error of fact, *i.e.*, if substantial competent evidence does not support a factual finding on which a prerequisite conclusion of law or the exercise of discretion is based. [Citation omitted.]" *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

An abuse of discretion occurs if discretion is guided by an erroneous legal conclusion or goes outside the framework of or fails to consider proper statutory limitations or legal standards. See *Matson v. Kansas Dept. of Corrections*, 301 Kan. 654, 656, 346 P.3d 327 (2015). Determination of a correct legal standard raises a question of law subject to de novo appellate review. *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011).

*Award of Custody to a Parent Who Did Not File a Motion to Modify*

"Kansas courts are vested with continuing jurisdiction to modify custody and visitation orders." *In re Marriage of Osborn*, 35 Kan. App. 2d 853, 855, 135 P.3d 199 (2006). K.S.A. 2016 Supp. 23-3218 provides, "the court may change or modify any prior order of custody, residency, visitation and parenting time, when a material change of circumstances is shown." In this regard, "'The paramount question for determination of custody as between the parents is what best serves the interests and welfare of the children. All other issues are subordinate thereto.'" *In re Marriage of Whipp*, 265 Kan. 500, 506, 962 P.2d 1058 (1998) (quoting *Simmons v. Simmons*, 223 Kan. 639, 642, 576 P.2d 589 [1978]).

K.S.A. 2016 Supp. 23-3219(a) addresses the process by which a party makes a motion to change legal or residential custody and provides in part:

"A party filing a motion to modify a final order pertaining to child custody or residential placement pursuant to article 22, 27 or 32 of chapter 23 of the Kansas Statutes

11

Annotated, and amendments thereto, shall include with specificity in the verified motion, or in an accompanying affidavit, all known factual allegations which constitute the basis for the change of custody or residential placement. If the court finds that the allegations set forth in the motion or the accompanying affidavit fail to establish a prima facie case, the court shall deny the motion. If the court finds that the motion establishes a prima facie case, the matter may be tried on factual issues."

Prior to what is now codified in K.S.A. 2016 Supp. 23-3219, Kansas courts found that a change in custody ordered either sua sponte or in favor of a parent who did not file a motion to modify custody was permitted when the court ordered such a change in response to a motion to change custody. For example, in *Liggett v. Liggett*, 165 Kan. 527, 531-32, 195 P.2d 577 (1948), our Supreme Court found the district court did not err when it modified the parents' custody arrangement by granting the father custody of three of the parents' five children even though he did not make a motion to change custody. The Supreme Court found it was

"an anomalous thing to say that if [the court granted the mother's motion in whole or in part] or that if the court had merely refused her prayer, the order would have been valid, but because the court gave custody of three boys to the father and of two boys to the mother that it was void." 165 Kan. at 531-32.

The court in *Liggett* ultimately held it is "immaterial who invokes the court's power, or what he may ask, for the court has a continuing duty to protect the custody of the minors, and to modify and change its orders whenever the circumstances render a change proper." 165 Kan. at 532. Then—almost half a century later—in *Dickison v. Dickison*, 19 Kan. App. 2d 633, 638-39, 874 P.2d 695 (1994), our court upheld a district court's order changing custody sua sponte in favor of a father after the court first denied the father's motion to modify custody for failing to prove a change in circumstances alleged in his motion.

Our court in *In re Marriage of Wilson*, No. 108,004, 2013 WL 3155790, at *2-3 (Kan. App. 2013) (unpublished opinion), relied on *Dickison* to find the district court did not improperly modify a child custody order under K.S.A. 2011 Supp. 23-3218 when the motion only sought an ex parte order to change residential custody based on emergency circumstances under K.S.A. 2011 Supp. 23-3219(b). Our court also found the plain language of K.S.A. 2011 Supp. 23-3218 does not require or mention that a motion must be made. *In re Marriage of Wilson*, 2013 WL 3155790, at *3.

As the court in *In re Marriage of Wilson* found, K.S.A. 2016 Supp. 23-3218 by its plain language does not require the filing of a specific motion to authorize a district court to modify custody. See 2013 WL 3155790, at *3. Indeed, nowhere in K.S.A. 2016 Supp. 23-3201 et seq. is the district court statutorily limited to order only such modification as sought by the motion. Rather, the district court is to determine legal and residential custody in accordance with the best interests of the child. K.S.A. 2016 Supp. 23-3201. Moreover, K.S.A. 2016 Supp. 23-3219(a) does not limit the district court's ability to determine legal or residential custody, but rather acts as a gatekeeper requiring verified facts to be alleged with specificity and requires a court to deny the motion if it fails to allege a prima facie case for a change of legal or residential custody.

As our Supreme Court found in *Liggett*, we are persuaded that in determining legal or residential custody it is "immaterial who invokes the court's power, or what he may ask, for the court has a continuing duty to protect the custody of the minors." 165 Kan. at 532. Accordingly, the fact the district court granted primary residential custody to Father is not an error of law simply because Father did not request this ruling.

*Award of Custody to a Parent Without a Finding of Changed Circumstances*

Next, Mother contends the district court abused its discretion when it sua sponte granted sole legal and primary residential custody to Father because he did not present any evidence to show there was a material change in circumstances.

Generally, when a parent seeks to modify a custody order, the parent seeking the modification must show a material change in circumstances. K.S.A. 2016 Supp. 23-3218. However, Kansas courts have previously held that a district court is not required to find a material change in circumstances before modifying orders or decrees that result from parents' agreed upon stipulations. *In re Marriage of Jennings*, 30 Kan. App. 2d 860, 863, 50 P.3d 506 (2002). Whether this exception applies turns on "whether the prior custody proceedings were substantially developed and presented to the court or whether custody was arranged by a written agreement and merely uncritically adopted by the court." *Johnson v. Stephenson*, 28 Kan. App. 2d 275, 280-81, 15 P.3d 359 (2000). This exception is consistent with the overarching legal principle that custody determinations should be based on the child's best interests. 28 Kan. App. 2d at 282.

A custody agreement incorporated into a decree of divorce "does not have the same effect as a court order that is issued after a hearing where evidence is presented and the trial court makes specific findings of fact." *In re Marriage of Jennings*, 30 Kan. App. 2d at 863. A party seeking to modify child custody based on a prior agreement of the parties incorporated into the divorce decree does not have to show a material change of circumstances when there has never been a prior court hearing held on the issue of child custody. *In re Marriage of Jennings*, 30 Kan. App. 2d at 863-64; *In re Marriage of Maule*, No. 101,771, 2009 WL 3018102, at *4 (Kan. App. 2009) (unpublished opinion). Instead, in this situation, the court may modify an agreement simply based on the best interests of the child. *In re Marriage of Jennings*, 30 Kan. App. 2d at 863-64.

14

In this case, the parents executed a separation agreement giving each one joint legal custody and shared residential custody. This original agreement between the parties was incorporated into the divorce decree by the district court without a contested evidentiary hearing. As a result, the facts relating to the original custody agreement were never substantially developed, and there was no requirement that Father show a material change of circumstances before the custody modification. Instead, the district court was able to modify the agreement based simply on the best interests of the child. We conclude the district court did not err as a matter of law by granting Father primary residential custody simply because he did not present evidence of a material change in circumstances.

JOINT LEGAL CUSTODY ORDER

For her second issue on appeal, Mother contends that although the district court ordered the parents to share joint legal custody, as it was defined by the court, this custodial arrangement erroneously granted Father *sole* legal custody of T.Z. In particular, Mother complains that, unlike actual joint legal custody, the district court essentially permitted Father to have the sole and ultimate legal authority to make parental decisions after conferring with her.

A district court's order modifying a legal custody order will not be disturbed in the absence of an abuse of discretion. See *In re Marriage of Grippin*, 39 Kan. App. 2d at 1031. These applicable legal standards were discussed earlier. See *Matson*, 301 Kan. at 656; *Harrison*, 292 Kan. at 672; *Ward*, 292 Kan. at 550.

In Kansas, when dealing with child custody determinations, the district court is to award both legal and residential custody. K.S.A. 2016 Supp. 23-3206; K.S.A. 2016 Supp. 23-3207. Legal custody refers to "the allocation of parenting responsibilities between parents, or any person acting as a parent, including decision making rights and

15

responsibilities pertaining to matters of child health, education and welfare." 2 Elrod, Kansas Law and Practice, Kansas Family Law § 12:13, p. 362 (2017). On the other hand, residential custody "denotes the day to day caregiving." 2 Elrod, Kansas Law and Practice, Kansas Family Law § 12:13, p. 362.

There are two types of legal custody—joint or sole. The district court may order joint legal custody or sole legal custody depending on the best interests of the child. Importantly, joint legal custody is given preference over sole legal custody. That is because the public policy of this state is to retain joint legal custody and equal decisional rights if feasible. *In re Marriage of Debenham*, 21 Kan. App. 2d 121, 125, 896 P.2d 1098 (1995). Under joint legal custody, Kansas law provides "the parties shall have equal rights to make decisions in the best interests of the child." K.S.A. 2016 Supp. 23-3206(a). "Joint legal custody implies, at the very least, *that both parents retain the decision-making authority for the major issues in rearing a child—education, medical care, activities*." (Emphasis added.) 2 Elrod, Kansas Law and Practice, Kansas Family Law § 12:14, p. 363 (2017).

Unlike joint legal custody, sole legal custody is not defined by statute. K.S.A. 2016 Supp. 23-3206(b). However, the guiding principle of sole legal custody is that it "puts the ultimate decision-making power in one parent." 2 Elrod, Kansas Law and Practice, Kansas Family Law § 12:15, p. 375 (2017). A district court may order sole legal custody only

> "when the court finds that it is not in the best interests of the child that both of the parties have equal rights to make decisions pertaining to the child. If the court does not order joint legal custody, the court shall include on the record specific findings of fact upon which the order for sole legal custody is based." K.S.A. 2016 Supp. 23-3206(b).

In this case, in her motion, Mother did not seek sole legal custody of T.Z. Similarly, Father did not request sole legal custody. For its part, the district court clearly ordered that both parents continue to share joint legal custody. The question presented on appeal, however, is whether the district court's award of certain decision-making authority to Father was erroneous because it was more akin to an award of sole legal custody than joint legal custody.

The district court initially ordered the parents to maintain joint legal custody whereby Father, as residential custodian, should consult with Mother on matters involving T.Z.'s care and activities, but he would retain authority to make decisions involving T.Z. unilaterally upon a disagreement between the parents. In the order on Mother's motion to alter or amend, the district court reiterated this was a joint legal custody order. The district court explained that the parents should work together in reaching agreements on what activities are best for T.Z., but if there was no agreement, the "parent with whom the child is residing has the ability to have the final say on what activities the child is involved in while [T.Z.] is with that parent." The district court gave as an example that Father has the final say on where T.Z. is to go to school because T.Z. resides with Father during school hours. Finally, the district court held that an attached parenting plan, which stated that "[Father] shall have the final say in any child rearing decisions," was the order of the court.

As noted in the Factual and Procedural Background section, after oral arguments on appeal the district court attempted to further clarify its order by reaffirming that both parents were to share joint legal custody, "but if there is a conflict as to the child's activities, . . . that the party whomever has the physical custody of the minor child should be the party to make the final decision regarding the activities of that child at that particular time."

17

While the contours of joint legal custody are necessarily flexible, the guiding principle is clear—under joint legal custody both parents have the decision-making authority regarding important matters of child-rearing. Our court has addressed this issue in *In re Marriage of Debenham*, 21 Kan. App. 2d at 122. In that case, our court rejected the notion that when parties have joint legal custody, the primary residential custodian should become the ultimate decision maker. If that were the case, our court observed that "the primary custodian would have the trump card in *all* decisions contrary to the statute, which provides for 'equal rights' to make decisions." 21 Kan. App. 2d at 122. Our court reaffirmed that "our legislature has declared joint custody and equal decisional rights as the public policy of this state. Under such mandate, courts are ill-equipped to decide these questions; but the courts must do so as best they can." 21 Kan. App. 2d at 125.

Our court has also acknowledged the inherent difficulties presented when district courts are confronted with those situations wherein parents who have joint legal custody cannot agree on child-rearing matters:

> "In the all-too-common event of a dispute on such a fundamental issue between parents who are subject to the court's ongoing jurisdiction during the minority of their child, it is the job of the courts to resolve the dispute in a manner that is in the best interests of the child." *Yordy v. Osterman*, 37 Kan. App. 2d 132, 134, 149 P.3d 874 (2007).

We are persuaded that Mother's complaint is meritorious. While ostensibly awarding both parents joint legal custody, the district court's order erroneously empowered Father, as the primary residential custodian, with the ultimate decision-making authority whenever the parents are unable to agree. This approach is not properly characterized as joint legal custody. As a result, the district court made an error of law.

It is true that joint legal custody does not give the nonresidential parent "moment-to-moment input" or "veto power" over every minor child rearing decision. *Jones v.*

18

*Walker*, 29 Kan. App. 2d 932, 935, 33 P.3d 872 (2001). However, under joint legal custody both parents "retain the decision-making authority for the major issues in rearing a child—education, medical care, activities." 2 Elrod, Kansas Law and Practice, Kansas Family Law § 12:14, p. 363.

In this case, the district court mistakenly explained that under its joint legal custody and primary residential custody order, because T.Z. resided with Father while attending school, Father had the ultimate authority to decide where T.Z. attended school. The district court explained, "[s]ince the child is living with [Father] during school hours, this [is] an example where [Father's] preference has priority." But under such reasoning, Father would have the ultimate say over most of the issues of T.Z.'s health, education, welfare, and activities of life because, as the residential parent, these matters would likely arise more frequently during T.Z.'s parenting time with Father rather than Mother. Under true joint legal custody, however, both Father and Mother have an equal say regarding these matters. And if the parents cannot agree, it is the district court's responsibility, not the primary residential custodian's responsibility, to resolve the disagreement in the best interests of the child.

In summary, the district court erred as a matter of law by awarding joint legal custody yet also permitting Father, as the residential custodian, to ultimately decide major issues involving T.Z. without Mother's agreement. We reverse this order. We remand with directions to reinstate the parent's agreed-upon parenting plan which provided for joint legal custody. We further direct the district court to file a journal entry providing that under the joint legal custody order, both parents shall consult with one another and have the decision-making authority for all major issues in raising T.Z., including but not limited to the child's education, medical care, welfare, and activities.

For her final issue, Mother contends the district court abused its discretion by granting Father primary residential custody. Mother raises several grounds. First, she argues the district court erred by ignoring K.S.A. 2016 Supp. 23-3202 which requires the court to presume that the agreed upon parenting plan was in the best interests of the child. Second, Mother asserts the district court failed to consider the 18 factor test under K.S.A. 2016 Supp. 23-3203. Third, Mother claims the district court erred because its decision on residential custody was unreasonable and not supported by substantial competent evidence. Once again, our standard of review in this matter is abuse of discretion. See *Matson*, 301 Kan. at 656; *Harrison*, 292 Kan. at 672; *Ward*, 292 Kan. at 550. We will address Mother's arguments individually.

*Presumption That the Parenting Plan is in the Child's Best Interests*

Mother argues that the district court should not have modified the existing parenting plan, which provides for shared residential custody, by designating Father as the primary residential custodian because Father did not present evidence rebutting the presumption that the parenting plan was in the best interests of the child. K.S.A. 2016 Supp. 23-3202 provides that "[i]f the parties have entered into a parenting plan, it shall be presumed that the agreement is in the best interests of the child." In order to overcome this presumption, the district court must articulate "specific findings of fact stating why the agreed parenting plan is not in the best interests of the child." K.S.A. 2016 Supp. 23-3202.

"The statutory presumption governs the district court in determining the child's best interests when the parties have presented an agreement for the court's adoption." *Talbot v. Pearson*, 32 Kan. App. 2d 336, 340-41, 82 P.3d 854 (2004). However, this presumption does not apply if the parties' circumstances have changed, the agreement

20

does not provide for those changes, and a new agreement is not presented to the district court. *In re Marriage of Bradley,* 258 Kan. 39, 43, 899 P.2d 471 (1995).

Here, the parties' circumstances have changed since the original divorce decree provided for shared residential custody. At the time of the divorce, Mother lived in Meade, Kansas. About six months after the divorce, however, Mother moved to Plains, Kansas. Courts have consistently found that a change in residence is a change of circumstance which may render the statutory presumption inapplicable if the agreement does not provide for that change and a new agreement is not presented to the court. See, e.g., *Maule*, 2009 WL 3018102, at \*6. Because the parenting agreement did not address a change in one parent's residence and no new agreement was presented to the district court, the presumption that a parenting plan was in the best interests of the child does not apply.

Moreover, "[m]atters regarding custody of children are always subject to modification even though the parties enter into various written agreements or stipulations incorporated into either a divorce decree or other final order. [Citation omitted.]" *In re Marriage of Jennings*, 30 Kan. App. 2d at 863. Although Mother initially sought to modify the parenting plan by seeking her designation as the primary residential custodian, her complaint that the district court was precluded from designating Father as the primary residential custodian because shared residential custody is presumptively in T.Z.'s best interests is unavailing.

*Failure to Make Findings Under K.S.A. 2016 Supp. 23-3203*

Next, Mother claims the district court abused its discretion because it failed to make findings of fact under the statutory factors set forth in K.S.A. 2016 Supp. 23-3203. This statute provides that in determining legal and residential custody, the district court should consider "all relevant factors" including 18 nonexclusive factors. Our court,

however, has held that a district court's failure to explicitly refer to each factor identified in K.S.A. 2016 Supp. 23-3203 is not fatal. See *In re Marriage of Vandenberg*, 43 Kan. App. 2d 697, 703, 229 P.3d 1187 (2010). "The statute simply does not require the district court to make specific findings with respect to each factor on the record." *Frakes v. Frakes*, No. 114,954, 2016 WL 4414021, at *5 (Kan. App. 2016) (unpublished opinion).

Kansas Supreme Court Rule 165 (2018 Kan. S. Ct. R. 215) places a duty on the district court to make adequate findings of fact and conclusions of law on the record. As a general rule, however, a party must object to inadequate findings to provide the district court with an opportunity to correct any inadequacy or the issue is not preserved for appeal. *Fischer v. State*, 296 Kan. 808, 825, 295 P.3d 560 (2013). Without an objection, an appellate court generally presumes the district court found all facts necessary to support its judgment. If the record does not support such a presumption and the lack of findings precludes meaningful review, however, an appellate court may consider a remand. See *O'Brien v. Leegin Creative Leather Products, Inc.*, 294 Kan. 318, 361, 277 P.3d 1062 (2012). Our function, when the district court fails to make adequate findings, is to review the record to determine whether it supports the presumption that the district court found facts sufficient to support its judgment. *In re Marriage of Whipp*, 265 Kan. at 509.

In this case, Mother failed to object to the district court's lack of findings on the statutory factors of K.S.A. 2016 Supp. 23-3203 or file a motion requesting the district court to make additional findings. As a consequence, we will presume the district court considered facts relevant to the statutory factors of K.S.A. 2016 Supp. 23-3203 if (1) the district court made factual findings relevant to several factors, and (2) the district court referenced the statute or referenced the best interests of the child standard. See, e.g., *Vandenberg*, 43 Kan. App. 2d at 703-04; *In re Marriage of Nemec*, No. 115,474, 2016 WL 6031300, at *4 (Kan. App. 2016) (unpublished opinion).

Here, the district court noted that it was applying the best interests of the child standard on multiple occasions. The district court also made factual findings relevant to several statutory factors. For example, the district court made findings relevant to K.S.A. 2016 Supp. 23-3203(a)(6) which provides that the court shall consider "the interaction and interrelationship of the child with parents, siblings and any other person who may significantly affect the child's best interests" when it found that Stepmother maintains a good relationship with T.Z. The district court also made findings relevant to K.S.A. 2016 Supp. 23-3203(a)(8) which states that the court shall consider "the willingness and ability of each parent to respect and appreciate the bond between the child and the other parent and to allow for a continuing relationship between the child and the other parent" when it found Father had maintained a positive interaction with the maternal family. In short, the record supports the presumption that the district court made findings of fact sufficient to satisfy the mandate of K.S.A. 2016 Supp. 23-3203 in determining residential custody. We conclude that the district court did not abuse its discretion by failing to apply the statutory factors listed in K.S.A. 2016 Supp. 23-3203.

*Substantial Competent Evidence to Support the Change in Residential Custody*

For her final argument, Mother contends there is no substantial competent evidence to support the change in T.Z.'s residential custody. Mother claims that all of the evidence presented by Father showed that shared residential custody, not primary residential custody with Father, was in T.Z.'s best interests. Mother also challenges the district court's finding that she could potentially sabotage the parenting plan by her lack of cooperation in the future.

"When the custody issue lies only between the parents, the paramount consideration of the court is the welfare and best interests of the child." *In re Marriage of Whipp*, 265 Kan. at 506. "The court must determine which parent will do a better job of rearing the children and provide a better home environment." *Simmons*, 223 Kan. at 642.

"The trial court is in the best position to make the inquiry and determination, and in the absence of abuse of sound judicial discretion, its judgment will not be disturbed on appeal. [Citations omitted.]" *In re Marriage of Whipp*, 265 Kan. at 506.

Our standard of review provides:

"When an appellant challenges the sufficiency of the evidence to support a trial court's findings regarding a child's best interests, this court reviews the evidence in a light most favorable to the prevailing party below to determine if the court's factual findings are supported by substantial competent evidence and whether those findings support the court's legal conclusion. [Citation omitted.]" *In re Marriage of Vandenberg*, 43 Kan. App. 2d at 704.

"Substantial evidence is such legal and relevant evidence as a reasonable person might accept as sufficient to support a conclusion." *In re Marriage of Kimbrell*, 34 Kan. App. 2d 413, 420, 119 P.3d 684 (2005).

In its order, the district court found it is in T.Z.'s best interests for both parties to maximize their time with T.Z. It also noted a substantial amount of evidence showed that it was in T.Z.'s best interests for the current shared residential custody to continue. This finding is well-supported. As detailed in the Factual and Procedural Background section of this opinion, witnesses testifying at the hearing stated almost universal agreement that under shared residential custody T.Z. was loved and cared for by both parents, maintained a cheerful personality, and was excelling in school.

The district court, however, declined to allow the shared residential custody to continue, and instead directed that Father maintain primary residential custody. The district court reasoned that although both parties are "good parents," have provided an abundance of support, given T.Z. a "bright future" such that the district court "[would] hate to change things," the change was necessary because Mother "can sabotage that

24

parenting plan by her lack of cooperation if she chooses." In short, the district court's ruling regarding residential custody seems rather inconsistent with the evidentiary substance of its findings. In this regard, we note that a district court's ruling may not be supported by substantial competent evidence if it is inconsistent with the court's previous comments or rationales. *In re Marriage of Lehner*, No. 96,698, 2007 WL 1667115, at *10-11 (Kan. App. 2007) (unpublished opinion).

The district court based its decision, in part, on its determination that Mother was not forthcoming at the evidentiary hearing and that she brought her initial motion to modify for financial reasons. While these findings are relevant to the weight afforded Mother's testimony, they are not dispositive of the critical question of what residential placement is in the best interests of T.Z. In the context of the strong and uniform testimony by Father and other witnesses that shared residential custody was in the best interests of T.Z., we question the district court's focus on Mother's testimonial shortcomings. As we have stated, "[a] child's residential placement must be made in the best interests of the child, not in retaliation for a parent's misconduct." *In re Marriage of Grippin*, 39 Kan. App. 2d at 1033. Regardless of Mother's motivation in filing her motion or any deficits in her testimony, the relevant evidence presented by *both* parents and other witnesses at the hearing showed that it was in the best interests of T.Z. for her to continue with shared residential custody.

The district court also found that Mother had "manipulated the parenting situation to the point that shared custody [was] not be feasible." Although the evidentiary basis for this finding is unclear, it appears the district court based its opinion on Mother's decision to enroll T.Z. in the school district where Mother resides, despite Father's objections. The district court characterized the parents' dispute over T.Z.'s education not as a disagreement by the parties but rather as "a manipulation of the situation by [Mother] to get her way."

25

The evidence showed, however, while Father testified that Mother would not allow T.Z. to attend school in Meade, it was uncontroverted the parties discussed where T.Z. was to attend school before Mother enrolled her. Moreover, the evidence also indicated that Mother did not conceal the actions that she was taking to enroll T.Z. in school. Rather, Mother informed Father of T.Z.'s pre-enrollment when it occurred. The evidence in the best light to Father shows that the parties discussed the matter, disagreed where T.Z. should receive schooling, Mother insisted on having T.Z. attend school where Mother resides, and Father reluctantly acquiesced in this decision. While this disagreement could have been resolved through mediation or district court involvement, both parents' decisions and actions have resulted in T.Z. excelling in her schooling. In sum, the evidence shows that while Mother was determined in her choice of a school and Father reluctantly acquiesced in her choice, this seems like a rather typical disagreement between parents rather than evidence of Mother's manipulation of the shared residential custody arrangement.

Another reason the district court gave for abandoning the shared residential custody arrangement was that "[Mother] can sabotage that parenting plan by her lack of cooperation if she chooses." Other than the finding of manipulation regarding T.Z.'s schooling—a finding not supported by substantial competent evidence—the district court did not make a finding that Mother had, in fact, sabotaged the shared residential custody plan during its several years of existence. Rather, the district court's rationale seems predicated on speculation that Mother might, "if she [so] chooses," sabotage the parenting plan in the future. The possibility of future sabotage by one or the other parent exists in every case in which they have reciprocal child custody rights and obligations. So that cannot be a legally sufficient reason to change those rights and obligations. If it were, then every order would be open to challenge and change at any time.

Kansas law provides, however, that a change in residential custody should be grounded in the best interests of the child and may not be based on pure speculation.

26

*Burgardt ex rel. Burgardt v. Willinger*, No. 109,083, 2013 WL 4730691, at *3-4 (Kan. Ct. App. 2013) (unpublished opinion). The district court's finding regarding the potential for Mother to sabotage the parenting plan is not supported by substantial competent evidence, and given its speculative basis, it is also not an appropriate legal ground to change shared residential custody. See *Burgardt ex rel. Burgardt*, 2013 WL 4730691, at *3-4.

Next, the district court concluded that shared residential custody was not appropriate because Father testified he "can't sit down and have . . . a deep conversation with [Mother]." But this finding is directly at odds with the district court's observation that Mother's concerns about the lack of communication were unwarranted because "there was certainly much communication" between Mother and Father. Our reading of Father's testimony persuades us that he was not concerned about the inability to have "a deep conversation" with Mother because there was no need for it since "[w]e talk every time we drop off and pick up in person. We talk over the phone and through texts . . . I don't believe there's a need to sit down at a table and talk about stuff that we've already talked about." We find no substantial competent evidence to support a finding of insufficient parental communications sufficient to warrant the abandonment of the shared residential custody plan.

Finally, the district court made findings regarding why residential custody with Father would be beneficial to T.Z. For example, the court found that Stepmother provides good support for T.Z. Also, the district court found that Father maintains a positive relationship with the maternal family because he had a friendship with Mother's brother, Deighton. On the other hand, the district court did not make any explicit negative findings regarding Mother's home environment that would suggest that primary residential custody with Father would be more beneficial to T.Z. than shared residential custody. In short, while the district court found that Father provides a good home

27

environment, it did not find that Father would provide a better home environment than Mother.

We are persuaded that a fair reading of the record conclusively shows there was insufficient evidence that it was in the best interests of T.Z. for Father to have primary residential custody. Father did not seek primary residential custody. Rather, his testimony bolstered the numerous witnesses who testified at the hearing uniformly supporting the shared residential plan. Moreover, there was substantial competent evidence to support the district court's findings that Mother and Father are supportive parents, T.Z. is an excellent student who was not absent or tardy at school, she is very social with other children, and had been doing well under the shared residential custody arrangement.

The bottom line, established by overwhelming evidence, is that both parents have contributed to successfully raising a daughter who is thriving with regards to her home life, health, education, and welfare. Since substantial competent evidence does not support the factual findings upon which the district court rendered its residential custody decision, we believe the court erred in modifying the agreed upon parenting plan regarding residential custody.

In conclusion, we reverse the district court's order which, although termed joint legal custody, is more akin to sole legal custody. We also reverse the district court's order awarding primary residential custody to Father. We remand with directions to reinstate the parent's agreed upon parenting plan which provided for joint legal custody and shared residential custody. We further direct the district court to file a journal entry providing that under joint legal custody, both parents shall consult with one another and have the decision-making authority for all major issues in raising T.Z., including but not limited to the child's education, medical care, welfare, and activities.

Reversed and remanded with directions.