NOT DESIGNATED FOR PUBLICATION

No. 124,451

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

B.R.M., A Minor Child,
By and Through Her Next Friend,

R.D.M.,
*Appellees*,

v.

M.B.W.,
*Appellant*.

MEMORANDUM OPINION

Appeal from Rawlins District Court; KEVIN BERENS, judge. Opinion filed April 15, 2022.
Affirmed.

*Michael P. Whalen*, of Law Office of Michael P. Whalen, of Wichita, for appellant.

*Todd R. Stramel*, of Stramel Law Firm, P.A., of Colby, for appellees.

Before MALONE, P.J., ATCHESON and WARNER, JJ.

PER CURIAM:  M.B.W., the mother of B.R.M, appeals the decision of the Rawlins
County District Court changing primary residential custody of the child from her to
R.D.M., the child's father. The evidence shows both parents love their daughter and each
has capably parented her. We review a district court's child custody ruling for abuse of
discretion. Given that especially deferential standard and the lack of anything in the
record patently rendering one parent markedly superior to the other, we affirm the district
court.

1

M.B.W. and R.D.M. never married. They lived together for several years surrounding B.R.M.'s birth in 2015. Paternity was never disputed. The couple separated in 2018, and they informally shared custody and parenting of B.R.M. When R.D.M entered a master's degree program at a small college in Iowa in 2019, he petitioned the district court for a finding of paternity and approval of a parenting plan. The district court entered a parenting plan granting M.B.W. primary residential custody of B.R.M. with R.D.M. having substantial visitation, particularly in the summer. R.D.M agreed to the plan because he was single and in a graduate program at a college in Iowa—a circumstance he concluded did not fit well with full-time parenting of a young child.

When R.D.M. anticipated completing his studies, accepted a job as an assistant football coach at a small Iowa college, and was about to be married, he filed a motion in early 2021 for primary residential custody of B.R.M. M.B.W. opposed the request. By that time, M.B.W. had become a commissioned law enforcement officer with the Garden City Police Department and had a second child—B.R.M's half-brother. Although M.B.W. was single and her work schedule with the department fluctuated, she parented both children with primary assistance from her own mother as a caregiver and sometimes from her grandmother.

The district court held a one-day evidentiary hearing on the motion in July 2021 and promptly entered an order granting primary residential custody of B.R.M. to R.D.M with a visitation schedule for M.B.W. M.B.W. has appealed.

The best interests of the child control in matters of custody and parenting time. K.S.A. 2020 Supp. 23-3201; *Harrison v. Tauheed*, 292 Kan. 663, 672, 256 P.3d 851 (2011). The party seeking a change in custody, here R.D.M., bears the burden of persuasion in the district court. See *Simmons v. Simmons*, 223 Kan. 639, 642, 576 P.2d 589 (1978); *In re Marriage of Fireoved*, No. 120,893, 2019 WL 5474302, at *2 (Kan. App. 2019) (unpublished opinion). District courts act in their sound judicial discretion in

2

making those determinations. *In re Marriage of Rayman*, 273 Kan. 996, 999, 47 P.3d 413 (2002).

We, in turn, review child custody orders for an abuse of that discretion. A district court exceeds that exceptionally broad authority if it rules in a way no reasonable judicial officer would under the circumstances, if it ignores controlling facts or relies on unproven factual representations, or if it acts outside the legal framework appropriate to the issue. See *Biglow v. Eidenberg*, 308 Kan 873, 893, 424 P.3d 515 (2018); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 935, 296 P.3d 1106 (2013).

Under K.S.A. 2020 Supp. 23-3203(a), the district court is to consider "all relevant factors" in assessing the best interests of a child. The statute identifies 18 factors that may be of relevance to child custody determinations. Not all of those factors apply in a given case, and some seldom do. Here, the district court recognized that statutory framework and identified and discussed the factors it considered relevant. A district court need not serially address each of the statutory factors when entering an order on primary residential custody. See *In re Marriage of Hodges*, No. 113,884, 2015 WL 9591381, at *4-5 (Kan. App. 2015) (unpublished opinion). A district court, likewise, need not catalogue or comment on all of the testimony and other evidence presented during a hearing. See *Hildenbrand v. Avignon Villa Homes Community Association, Inc.*, No. 120,245, 2021 WL 137339, at *8 (Kan. App. 2021) (unpublished opinion); *Peralta-Diaz v. Ortega*, No. 120,291, 2020 WL 593938, at *8 (Kan. App.) (unpublished opinion), *rev. denied* 311 Kan. 1046 (2020).

We have reviewed the district court's written ruling in light of the trial record and the points R.D.M. and M.B.W. have made in their respective appellate briefs. We do not recite the evidence in detail. The parties are fully aware of those details, and no good purpose would be served with such an extended narrative. We can and do say that the

3

parental ledger for each of them has plusses and minuses and, side-by-side, those ledgers qualitatively are more alike than they are different.

Most significantly, as we have already said, the district court recognized that both R.D.M. and M.B.W. loved their daughter and were able to competently provide parental care and guidance to her. Each of them had immediate and capable support in carrying out their parental duties. R.D.M's job entailed typical work hours, except during football season when he would be expected to travel overnight to his team's away games. By the time of the hearing, R.D.M. had married, and his wife, who worked as a paraprofessional at a local school and anticipated receiving her college degree in a few months, often looked after B.R.M. M.B.W. worked a more irregular schedule but had an established support network, including her own mother and other relatives. Both sets of B.R.M.'s grandparents lived in western Kansas.

M.B.W. had enrolled B.R.M. in preschool among other activities, so the child had a circle of other children with whom she interacted. Similarly, B.R.M. engaged in summer activities in Iowa with children her own age. The district court pointed out that B.R.M. would be starting kindergarten in the fall and entering a new school whether she stayed principally in Garden City or moved to Iowa.

By all accounts, B.R.M. is a fairly typical, well-adjusted five-year-old. She enjoys a good relationship with her younger half-brother. The district court did not elicit information about what B.R.M. may have thought regarding where she would principally reside and did not interview her. Neither parent has questioned that decision, given B.R.M.'s young age. See K.S.A. 2020 Supp. 23-3203(a)(3) (best interests factors include "desires of a child of sufficient age and maturity"). The district court's approach was entirely reasonable. The district court acknowledged B.R.M.'s relationship with her half-brother but found R.D.M.'s interests to be superior.

4

M.B.W. and R.D.M both testified during the hearing, and each called complementary (and often complimentary) witnesses. Some—like M.B.W.'s mother—came with built-in biases. Many of the witnesses had not really observed either M.B.W. or R.D.M. parent B.R.M. on any sustained basis.

The district court found that M.B.W. regularly failed to both inform R.D.M. about B.R.M.'s activities and solicit his input about decisions affecting her. The district court pointed to M.B.W.'s unilateral decision to enroll the child in a preschool program, as an example. The district court found M.B.W. often didn't share information unless R.D.M. made specific inquiries and that lack of openness significantly impeded adequate coparenting. The district court concluded that process would be more candid and cooperative and, thus, more effective if R.D.M. had primary residential custody of B.R.M. See K.S.A. 2020 Supp. 23-3203(a)(10) (best interests factors include "the ability of the parties to communicate, cooperate[,] and manage parental duties").

This, of course, was not a situation in which B.R.M. would be cut off from her mother, half-brother, or other members of her family if primary residential custody were switched to R.D.M. M.B.W. would have significant visiting time with B.R.M. Likewise, the district court's decision did not place B.R.M. with people strange to her or in a place foreign to her.

The district court's findings are supported in the hearing evidence. And the district court recognized and applied the statutory factors outlined in K.S.A. 2020 Supp. 23-3203(a). The ultimate decision cannot be described as one patently indifferent to B.R.M.'s best interests and, thus, as a decision prompting us to say no other district court would come to the same conclusion in comparable circumstances. In short, there is nothing flagging an abuse of judicial discretion. We are inclined to characterize this case as one of those in which the district court would not have abused its discretion whichever way it ruled. See *In re Marriage of Bos*, No. 109,850, 2014 WL 1796155, at *3 (Kan.

App. 2014) (unpublished opinion) (so stating in child custody dispute); see also *McMahan v. Toto*, 256 F.3d 1120, 1129 (11th Cir. 2001) ("[U]nder an abuse of discretion standard there will be circumstances in which we would affirm the district court whichever way it went.").

On appeal, M.B.W. contends the district court ignored evidence favoring her that went unmentioned in the findings of fact and conclusions of law. In particular, she points to her testimony that R.D.M. was emotionally abusive of her and other testimony that he angrily snapped at her in front of others in at least one social setting. As we have indicated, a district court need not recount all of the evidence in fashioning a written decision, and the omission of particular situations or circumstances does not equate to a failure to consider the evidence about them. *Hildenbrand*, 2021 WL 137339, at *8. Rather, it commonly signals the district court found the evidence either unpersuasive or irrelevant. Here, the district court also omitted from its decision some evidence offered during the hearing that could be construed as casting M.B.W. in a negative light. We see no error in the district court's assessment of the hearing record.

Affirmed.